# Bibb, Adm'x *v.* Freeman *et al.*

### *Voluntary Conveyance.*

1. *A voluntary conveyance of a debtor is void against existing creditors.*—In this State, a voluntary conveyance by a debtor, having property more than sufficient to pay all debts or demands against him, is by presumption of law void as to existing creditors, although no fraudulent intent can be imputed either to the donor or the donee.

2. *A person having a contingent claim is a creditor within the meaning of the statute of frauds.*—A creditor, within the statute of frauds (Code of 1876, ? 2124), as to whom a voluntary conveyance is void, is not necessarily one, who has a demand for money which is due, or running to maturity, or who has an existing cause of action. Whoever has a claim or demand on a contract in existence at the time a voluntary conveyance is made, is a *creditor* within the meaning of the statute. A contingent liability is as fully protected as a claim that is certain and absolute.

3. *A conveyance beneficial to the donor or injurious to the donee is not voluntary.*—A voluntary conveyance is founded exclusively on motives of generosity and affection. If the donor receive a benefit, or the donee suffer detriment as the consideration of the conveyance, the consideration is valuable. However trivial the benefit to the one, or the damage to the other may be, the conveyance is not voluntary.

4. *The damage caused by a breach of covenant of seisin is the purchase-money with interest.*—In a recovery based on a broken covenant of seisin, the measure of damage is the purchase-money paid, with interest.

APPEAL from the Chancery Court of Talladega.

Heard before the Hon. NEIL S. GRAHAM.

On the 29th day of December, 1857, Fleming Freeman sold and executed to Joseph B. Bibb a deed of conveyance of twelve hundred and eighty-five acres of land situated in the county of Montgomery. The deed contained the usual covenants of warranty. The purchaser entered upon and took possession of the premises, for which he paid nineteen thousand two hundred and seventy-five dollars.

About the 23d day of November, 1859, one Jesse Bozeman, as the guardian of Daniel Flinn (a minor), instituted a suit in the Circuit Court of Montgomery county against Joseph B. Bibb to recover of him about eighty acres of land held by Bibb under the deed of Freeman. Due notice of the pendency of this suit was given to Freeman; and at the June term, 1868, of the Montgomery Circuit Court, a judgment for the land and damages for its detention, was rendered against Bibb. In September, 1869, Joseph B. Bibb

made his will and died. By it James M. Newman was named as executor. He accepted the appointment and entered upon the discharge of his duties.

In the meantime Fleming Freeman had become totally insolvent.

For the purpose of recovering damages for the breach of covenants contained in the deed executed by Freeman to Bibb on the 29th day of December, 1857, Newman filed a bill of complaint in the Chancery Court of Talladega county on the 10th day of July, 1872. The complainant sought to set aside the following deeds of conveyances, and to subject the land therein described to the payment of the said damages:

"The State of Alabama, Montgomery county. Know all men by these presents, that I, Fleming Freeman, of the county and State aforesaid, for and in consideration that David H. Remson shall come and abide on my plantation, known as the Taylor plantation, and plant a portion thereof under an agreement made between the said Remson and myself, bearing date with this instrument, and for the further consideration of good-will and affection which I bear to said Remson and his family, give, grant and convey unto said Remson the following described lands, viz.: Southeast quarter of section twenty-two, southwest quarter of section twenty-three, northeast quarter and southeast quarter of section twenty-seven, and northwest quarter and southwest quarter of section twenty-six—all in township sixteen and range eighteen—to have and to hold the same to him, subject to the following conditions and trusts, viz.: During my life I am to have the right to cultivate such portions of said lands as is authorized under the agreement between said Remson and myself as above named. After my death, the said David H. Remson, should he survive me, shall hold the said lands during his life-time for his own use and benfit, and at his death the said lands shall be vested in Caroline N. Remson, wife of said David H. Remson should she then be living, and all the children of the said David H., excepting Charles F. F., and Seaborn W., the oldest children of said Caroline N., for whom other provision has been made. But should the said Caroline N. not be living at the death of the said David H. Remson, then the said lands shall vest in all the children of the said David H. Remson, excepting the said Charles F. F. and Seaborn W.

"And I, Nancy Freeman, the wife of the said Fleming Freeman, for the good-will and affection I bear to the said David H. Remson and his family, do hereby relinquish all

right of dower in the real estate herein described, and hereby join in this conveyance.

"In witness of all of which, we the said Fleming Freeman and Nancy Freeman have hereunto set our hands and seals this — day of January, 1859.

"FLEMING FREEMAN,
"NANCY FREEMAN."

"The State of Alabama, Montgomery county. By these presents, I, Fleming Freeman, and Nancy Freeman, wife of Fleming Freeman, of the above State and county, do make this codicil to a deed of gift made to David H. Remson, his wife, Caroline N. Remson and children, bearing date January, 1859, and recorded in the office of the judge of probate of said county on the 16th day of May, 1859. One of the considerations of the deed of gift as described above, requires the said Remson to live and abide on the plantation, and to plant a portion thereof under an agreement made between said Remson and myself, said agreement bearing date with the deed of gift, thereby depriving said Remson and family from moving or leaving said plantation, in the event they should think proper to do so. Now, for the purpose of securing the Taylor tract of land, as described in the deed of gift, to the said Caroline Remson and her children by the said D. H. Remson, we do hereby declare all articles of agreement affecting or in the least detrimental to his interest or her interest, null and void, and of no further value, and we do furthermore, in consideration of the good-will and affection which we bear to said Remson and family, give, grant and convey unto Caroline Remson and children, the following described lands as described in the deed of gift to said D. H. Remson and family, viz.: Southeast quarter of section twenty-two, southwest quarter section twenty-three, northeast quarter, southeast quarter section twenty-seven, northeast quarter of southwest quarter of section twenty-six—all in township sixteen and range eighteen—to have and to hold the same during her life, and after her death to the said D. H. Remson's children. It is furthermore expressly understood that this deed of gift is not to take effect until after the death of myself and my wife, Nancy Freeman. In fee simple whereof we have hereunto set our hands and seals, this ninth of May, in the year of our Lord one thousand eight hundred and sixty-four.

"F. FREEMAN,    [L. S.]
"NANCY FREEMAN," [L. S.]

[Bibb, Adm'x v. Freeman et al.]

At the time of the execution of the foregoing deeds, the grantor was not in debt, and possessed great wealth.

. The chancellor, on the final hearing, dismissed the bill of complaint for want of equity. After the decree, and before an appeal was taken, the complainant died. · Mrs. Martha D. Bibb was then appointed administratrix *de bonis non*, with the will annexed. Upon her petition, the suit was revived, and an appeal was taken to the Supreme Court.

BRICKELL, C. J.—The law in this State is settled, that as to existing creditors, a voluntary conveyance by a debtor is by presumption of law, absolutely void, though no fraudulent intent is imputable to donor or donee, and though the donor may have reserved from the conveyance property more than sufficient for the satisfaction of all debts and demands against him.—*Miller v. Thompson,* 3 Port. 196; *Foote v. Cobb,* 18 Ala. 585; *Gunnard v. Eslava,* 20 Ala. 732; *Thomas v. De Graffenreid,* 17 Ala. 602; *Moore v. Spence,* 6 Ala. 506; *Stiles & Co. v. Lightfoot,* 26 Ala. 443; *Huggins v. Perrins,* 30 Ala. 396.

It is equally well settled, that *a creditor* within the statute of frauds, (Code of 1876, § 2124,) as to whom a voluntary conveyance is void, is not necessarily one having a demand for money which is due, or running to maturity, or one having an existing cause of action. Whoever has, or may have a claim or demand upon a contract in existence at the time the voluntary conveyance is executed, is a *creditor* within the meaning of the statute.—*Foote v. Cobb, supra.* A contingent claim, is as fully protected, as a claim that is certain and absolute. The covenantee of a covenant of general warranty, who is evicted by a title paramount and outstanding at the time the covenant is entered into, is regarded as a *creditor,* not from the time of eviction, but from the time the covenant was executed; and a subsequent voluntary conveyance, is, as to him, void.—*Gunnard v. Eslava, supra.*

In the application of the principle that voluntary conveyances, are, as matter of law, conclusively presumed fraudulent and void as to existing creditors, the definition of a voluntary conveyance must be steadily kept in view. It is a conveyance founded merely and exclusively on a good, as distinguished from a valuable consideration, on motives of generosity and affection, rather than on a benefit received by the donor, or detriment, trouble, or prejudice to the donee. If the donor receives a benefit, or the donee suffers detriment, as the consideration of the conveyance, the consideration is

valuable, not good merely. However inadequate such consideration may be—however trivial the benefit to the one, or the damage to the other, the conveyance is not voluntary. The inadequacy, is a circumstance which with other facts, may impart an actual intent to hinder, delay and defraud the creditors of the grantor, but it does not change the character of the conveyance—does not convert it into a voluntary conveyance.—Bump on Fraud. Con. 262. The intent of the party making it, determines its validity or invalidity, whatever may be its form, or the consideration it recites. If he intends *to give*, and the donee accepts with knowledge of the intention, the conveyance is voluntary. If he intends to *sell*, and there is a valuable consideration, the conveyance is not voluntary. The true inquiry therefore is, was the transaction in which the conveyance originates, *a gift*, or *a sale*. *Van Wyck v. Seward*, 18 Wend. 386. In this case, a conveyance was made by a father of real estate to his son, requiring the latter to pay his sisters such an amount as the father should decree their portion of his estate. Though the son by accepting the conveyance, became liable to pay the daughters the amount the father should declare, the conveyance was held voluntary. The manifest intent of the donor was to dispose of the lands to and among his children from motives of affection.

After a careful examination of the conveyances made by Freeman, in January, 1859, to Remson, its terms, limitations, and conditions, and a consideration of the cotemporaneous agreement to which it refers, so far as the contents of that agreement are shown by the evidence,—of the relation of the parties, the circumstances surrounding them, when the conveyance was executed, and their subsequent conduct in reference to it, we can discover no substantial ground on which the conveyance can be regarded as *a sale*, and not as *a gift*— as founded on a valuable consideration, and not merely and exclusively on generosity and affection. The element of value, which it is supposed entered into the consideration, freeing the conveyance from the character of voluntary, is that it was made in pursuance of a promise by the donor to give the lands to Remson, if the latter would move from his residence in the county of Talladega, and reside on the lands, cultivating them under the cotemporaneous agreement to which reference has already been made.

It is often a matter of great difficulty, to discern the line which separates promises creating legal obligations, from mere gratuitous agreements. Each case depends so much on

its own peculiar facts and circumstances, that it affords but little aid in determining other cases of differing facts. The promise, or agreement, the relation of the parties, the circumstances surrounding them, and their intent, as it may be deduced from these, must determine the inquiry. If the purpose is to confer on the promisee, a benefit from affection and generosity the agreement is gratuitous. If the purpose is to obtain a *quid pro quo*—if there is something to be received, in exchange for which the promise is given, the promise is not gratuitous, but of legal obligation.—*Erwin v. Erwin*, 25 Ala. 241. In *Kirksey v. Kirksey*, 8 Ala. 131, a brother-in-law, wrote to the widow of his brother, living sixty miles distant, that *if she would come and see him, he would let her have a place to raise her family*. Shortly after, she broke up and removed to the residence of her brother-in-law, who for two years furnished her with a comfortable residence, and then required her to give it up. The promise was held gratuitous, though the sister-in-law in consequence of it had sustained the loss and inconvenience of breaking up and moving to the residence of the promissor. In *Forward v. Armstead*, 12 Ala. 124, a father residing in this State, promised a son residing in North Carolina, to give him a particular plantation in this State, and slaves, if he would remove to and settle upon it. The son was induced by the promise to break up his residence in North Carolina at a loss, and was put to expense and inconvenience in removing to this State. The promise was declared gratuitous, and that the father could not be compelled to perform it specifically. The inconvenience and loss the son sustained, was insisted on as furnishing a valuable consideration for the promise. But the court said: "It seems to us, that the expense incurred in a removal under such inducements, does not furnish the test whether the engagement is to be considered a contract, instead of a gratuity, because expense, or at least trouble, which is equivalent to it, must always be incurred; but as we have before indicated, the test is, whether the thing is to be *paid* in consideration of the removal, instead of being *given* from motives of benevolence, kindness, or natural affection."

The conveyance refers to the cotemporaneous agreement between the donor and the adult, active donee who was free from disability. It is shown that agreement was in writing, and has been lost. Its terms according to the evidence of the donor, and one of the donees, who are the only witnesses speaking of them, were, that Remson should remain on the

[Bibb, Adm'x v. Freeman et al.]

lands conveyed, and superintend their cultivation, and that of two other plantations, the property of the donor. The fact is not distinctly stated, but it is of necessary inference from the facts stated that each of these three plantations were supplied with hands and every other necessary appliance for cultivation, the property of the donor. To their cultivation, Remson was to contribute no more than his personal services in superintending them. From all three plantations he was to receive one-fifth of the products of cultivation—receiving no more from the cultivation of the lands conveyed, than from the plantations not conveyed. If compensation was intended to be paid him for removing from his home in Talladega to the lands conveyed—for loss and inconvenience sustained in the removal—for personal services rendered, or to be rendered, it was to be derived from the share of the products of the cultivation of the several plantations, to which the agreement entitled him. We can not regard these as forming part of the consideration of the conveyance of the lands.

When the conveyance was executed, Remson was involved in debt, and the donor was of ample fortune. A relationship existed between them, the donor not having probably nearer relatives than Remson and his family, and none so far as is shown, whose condition appealed more strongly to his sympathy. The conveyance does not vest the right to immediate absolute possession until the death of the donor. At his death it confers on Remson a life estate only, with remainder to his wife if she survives him, and all their children except two, *for whom other provision has been made.* The wife of the donor joins in the conveyance for the purpose of releasing her contingent right of dower, and the release is expressed to be in consideration of *good will and affection* borne to said David H. Remson and family. The whole scheme of the conveyance is testamentary. We do not mean to say that it is a will, though it may closely approach it—but it is a disposition by deed from motives of affection, to take effect after the death of the donor. It has all the elements, qualities, limitations and terms to be found in a voluntary conveyance executed by parties sustaining the relations of the parties to it, surrounded by the circumstances surrounding them, and but few, if any, of the elements of a sale between parties contracting on a valuable consideration. We repeat we cannot doubt it was founded on no other consideration than love and affection—that the parties never thought of buying and selling—and that the

[Bibb, Adm'x v. Freeman et al.]

stress of subsequent and unanticipated events, has induced them to suppose that there was some other consideration for it than affection and benevolence. Without closing our eyes to the truth of the transaction—to the motives we irresistibly feel must have actuated the donor, and to the intent of the parties collected from the circumstances surrounding them, we cannot hesitate to pronounce the conveyance voluntary. It is consequently void as against the appellant.

The decree of the chancellor is reversed and a decree here rendered granting the complainant the relief prayed for.

The recovery in this case is based on a broken covenant of seisin. In such case, the measure of damage is the purchase-money paid, with interest.—See Sedg. Meas. of Damages, marg. 170. But the failure of title and eviction being partial, the recovery must be proportioned to the value of the part of the premises to which the title has failed.—Ib. 171. In taking the account, the true measure of recovery is, the proportion which the eighty acres lost bear to the value of the whole tract conveyed, rating the whole value at $15 per acre. In other words, if the eighty acres was of precisely equal average value with the whole tract, then the complainant's measure of recovery is twelve hundred dollars with interest. In estimating these damages, the value of the eighty acres as a component part of the tract will be taken into the account, and its value graduated accordingly, whether above or below the average.

The action at law which resulted in Bibb's eviction from the eighty acres, was commenced in less than two years after Freeman's sale and conveyance to him. Damages by way of mesne profits were recovered from him, which together with costs and attorney's fees he has had to pay. We will make no order of recoupment for the use and occupation enjoyed by Bibb. For these he has accounted to the rightful owner.

It is referred to the register to take and state an account on the principles above expressed; and he will compute interest on the sum ascertained to be due from the sale to the coming in of the report. He will consult all legal evidence on file, and such other evidence as may be offered—with a right to re-examine witnesses heretofore examined. All other questions are reserved for decision by the chancellor.

STONE, J.; not sitting.