# Johnson & Thornton *v.* Allen & Jemison.

*Action for Breach of Special Contract for Purchase of Coal.*

1. *Contract for delivery of coal in specified quantities, and during specified periods, construed.*—Under a contract for the sale of 500 tons of coal, at a specified price, to be delivered on the cars by the defendants at their place of business, as plaintiffs might order, between the 12th September (the date of the contract) and the 31st March following, provided that not more than 200 tons should be ordered "in any one month;" the first order, made in September, being for 200 tons, the defendants were not required to deliver that quantity during the remaining days of that month, but were entitled to one month from the date of the contract within which to make the delivery, and to a like period for each successive order of 200 tons.

2. *Same; partial deliveries, under maximum orders.*—Each successive order and delivery, under such contract, are to be treated as in the nature of a separate and distinct contract: a failure to deliver any part of the quantity ordered, or a partial delivery only, would not terminate the contract, unless the plaintiffs elected so to consider it; and a partial delivery being accepted by them, they would not have the right to carry the deficiency over into the next month, and demand it in addition to the maximum quantity specified for each monthly delivery.

3. *Same; maximum monthly orders; failure to deliver.*—Plaintiffs having ordered 200 tons during each of the months of September and October, could only order 100 tons in November, which would exhaust the contract; and the defendants' failure to deliver, each month, the full quantity ordered, was a separate breach, accruing at the end of each month.

4. *Same; measure of damages for breach.*—The coal being mined by the defendants at a railroad station where they alone were engaged in the business, and being intended, as they knew, for sale by the plaintiffs in Tuskaloosa, the nearest market, where they were engaged in the business, the measure of plaintiffs' damages for a breach is the difference between the contract price and the market price in Tuskaloosa, with cost of transportation added; and this is to be estimated for each separate breach, on each partial delivery.

5. *Same; application of surplus deliveries after breach.*—After the contract was exhausted by the maximum orders during the months of September, October, and November, any subsequent deliveries, accepted by the plaintiffs, must be applied to the several breaches in the order of their occurrence, beginning with the first.

6. *General exception to entire charge.*—A general exception to an entire charge, containing several separate and distinct clauses, some of which are free from error, can not be sustained.

APPEAL from the Circuit Court of Tuskaloosa.

Tried before the Hon. S. H. SPROTT.

This action was brought by Allen & Jemison, suing as partners, against Johnson & Thornton as partners, to recover dam-

ages for the breach of a written contract for the sale and de-
livery of 500 tons of coal; and was commenced on the 13th
March, 1883. The contract was dated September 12th, 1882,
and was signed by both of the parties; and it contained the
following (with other) stipulations: "The parties of the first
part hereby agree to sell to the said Allen & Jemison five hun-
dred (500) tons of run of the mine, merchantable coal, from
their mines near Coaling, Alabama, at the price of one dollar
and a half ($1.50) per ton of 2000 lbs., on the cars of the Ala.
Great Southern R. R., at Coaling; all of said coal to be de-
livered as the said Allen & Jemison may order, between the
12th day of September, 1882, and the 31st day of March, 1883;
provided not more than 200 tons shall be ordered in any one
month, if said Johnson & Thornton find it inconvenient to
ship more." The complaint set out the contract, and alleged
as a breach the defendants' failure to deliver the coal as stipu-
lated, as ordered by the plaintiffs during the months of Sep-
tember, October, November, December, and January. The
defendants pleaded the general issue, and the cause was tried
on issue joined on that plea, resulting in a verdict and judg-
ment for plaintiffs for $150.

On the trial, as appears from the bill of exceptions, the
plaintiffs having read the contract in evidence, said Jemison
testified on their behalf, "that he, on behalf of said plaintiffs,
demanded of defendants the delivery to plaintiffs of 200 tons
of coal, in each of the months of September, October, Novem-
ber, December, and January, in pursuance of said contract;
that defendants only delivered 32 tons in September, 32 in
October, 112 in November, 124 in December, and 116 in Jan-
uary, and, about the 1st February, 1883, refused to deliver
any more coal under said contract; that the market price of
coal in Tuskaloosa, during the month of September, was about
the same as when the contract was made; that during the
months of October and November it was about twenty-five
cents per ton higher than when said contract was made; that
in December, January, February, and March, the price went
up very much, being at one time in January as high as twenty-
five cents per bushel; that the market price in Tuskaloosa,
during much of the time in December, January, and February,
was fifteen cents per bushel; that plaintiffs had to pay in the
market about this time, to supply their customers, as high as
$16\frac{2}{3}$ cents per bushel; that the cost of coal, and freight on the
same from Coaling to Tuskaloosa, at $1.50 per ton, was 7 11-16
cents per bushel, and the difference between this and the
market price in Tuskaloosa, part of the time during the winter,
was 7 5-16 per bushel; that the whole number of tons deliv-
ered by defendants was 84 tons short of the amount covered

by the contract; that plaintiffs had paid for all the coal delivered, and for no more; that defendants were the only persons dealing in or mining coal at Coaling, and coal could not be there purchased at any price except from them; that plaintiffs were coal-dealers in Tuskaloosa, and that defendants knew said coal was to be used in Tuskaloosa."

On this evidence, the court charged the jury, "among other things, as follows: That upon defendants' failure to deliver said 200 tons of coal in the month of September, there was a breach of said contract, and plaintiffs' right of action accrued, but they had a right to waive said breach of contract; and in like manner, plaintiffs had a right to waive any other breach of said contract, shown by the evidence to have occurred. In other words, if plaintiffs demanded the delivery of 200 tons of coal the first month, and the defendants delivered any part of the quantity, then plaintiffs had the right to demand the delivery of 200 tons the second month, and, in addition thereto, whatever part of the 200 tons the defendants failed to deliver the first month, until the whole 500 tons provided for by the contract was delivered. That the measure of damages in this case is the difference between the contract price of the coal (that is, $1.50 per ton) and the market price of the same coal at Coaling, at the time of the breach of the contract—that is, at the time of the failure to deliver the coal, if its delivery was demanded at a time when plaintiffs had a right to make such demand; and if there was no coal selling at Coaling, then the jury may consider the evidence as to the cost of coal at $1.50 and freight to Tuskaloosa added, and the market price at Tuskaloosa at the time of the breach."

The defendants excepted to this charge as a whole, and requested the court, in writing, to instruct the jury as follows: "1. If the jury should believe, from the evidence, that the plaintiffs had the right, under the contract, to demand the delivery of 200 tons per month, and that they did demand the delivery of 200 tons in the first month of said contract, and a like delivery of 200 tons in the second month; then it was the duty of the defendants to have delivered the coal for each of said months during the continuance of each, and the failure so to deliver it was a breach of said contract; and the measure of damages is the price of said coal at the time of said breach, and not at a subsequent time, from which is to be deducted the price which plaintiffs were to have paid for said coal if it had been delivered." The court refused this charge, and the defendants excepted to its refusal.

The charge given, and the refusal of the charges asked, are now assigned as error.

R. L. THORNTON, and JNO. M. MARTIN, for appellants, cited 2 Whart. Ev. § 1017; *Brown v. Muller*, 7 Ex. (L. R.) 319; *Roper v. Johnson*, 8 C. P. (L. R.) 167; Benjamin on Sales, §§ 881–2; *Startup v. Cartazzi*, 2 Cr., M. & R. 165; 1 Tyr. 676.

A. C. HARGROVE, *contra*.    (No brief on file.)

CLOPTON. J.—By the contract, for the breach of which this action is brought by appellees, the defendants agreed to sell to the plaintiffs five hundred tons of coal, at one dollar and a half per ton, to be delivered on the cars at Coaling, as the plaintiffs might order, between September 12, 1882, and March 31, 1883; provided that not more than two hundred tons be ordered in any one month, if the defendants find it inconvenient to ship more.    There are other stipulations in the contract, which, however, have no bearing upon the question raised by the record.    The plaintiffs demanded of the defendants the delivery of two hundred tons during each of the months of September, October, November, and December, 1882, and the month of January, 1883.    The defendants delivered some coal during each of the months mentioned, but not as much as two hundred tons in any one month; and about the first of February, 1883, refused to deliver any more coal.    The plaintiffs paid the defendants for the coal actually delivered.    The defendants were the only persons dealing in and mining coal at Coaling, and coal could not be purchased at that place from any other persons.    The defendants knew that the coal was to be used in Tuskaloosa, at which place the plaintiffs were dealing in coal.

The contract is an executory contract for the sale of five hundred tons of coal—a fixed quantity—at an agreed price, to be delivered at such times and in such quantities as the plaintiffs might order, between September 12, 1882, and March 31, 1883; but the defendants were not to be required to deliver exceeding two hundred tons in any one month.    The contract was made September 12, 1882; and as we construe it, when the first demand for the delivery of two hundred tons was made, the defendants were entitled to one month from the time of the making of the contract, in which to make the delivery. The parties and the court, however, seem to have understood the contract as meaning that, when the first demand was made, it was the duty of the defendants to deliver the two hundred tons during the month of September; and perhaps it is due to them, in considering the questions presented by the record, that we treat their interpretation as accepted for the purpose of this appeal, since the rules of law applicable to and controlling the case, as to the questions we are authorized to con-

[Johnson & Thornton v. Allen & Jemison.]

sider, are not varied by the construction of the contract in this respect.

When the plaintiffs ordered the delivery of two hundred tons in the month of September, the contract must be considered the same as if it had been written therein that the defendants agreed to deliver that quantity during that month; and so of the order for each succeeding month. The contract is for the sale of a determinate quantity of coal, to be delivered by installments; the plaintiffs waving the right and option to fix the installments, limited by the provision, that no installment or installments in one month should exceed two hundred tons; and the orders were to be given between specified dates. A delivery of only a part of the quantity ordered, or a failure to deliver any part of it, does not terminate the contract, unless the plaintiffs saw proper to so treat and regard it. The contract continues, as to future orders, during the period stipulated. Each delivery is considered in the nature of a separate and distinct contract.

In *Deming v. Kemp*, 4 Sand. (N. Y.) 147, the contract was for the sale and delivery of carbon during the fall and winter following, at various times, as the defendant might require, not exceeding forty tons, at $2\frac{3}{4}$ cents per pound, in parcels of twenty thousand pounds. It was held, " that these separate deliveries are to be considered in their nature as separate contracts." Cockburn, C. J., in reference to a contract for the sale of two thousand tons of iron, " delivery in monthly quantities over 1871, or sooner if required, the delivery of some of the monthly quantities having been postponed at the request of the vendee, who afterwards, in December, 1871, demanded the delivery of the residue of the two thousand tons," said : " I think the postponement had the effect of carrying the period over the year 1872, but that the defendants could not be called upon to deliver 1,000 tons of iron at one time, but only in such quantities as was originally provided for."—*Tyers v. R. & F. Iron Co.*, 10 Ex. 195. And in Wood's Mayne on Damages, 251, it is said : ', But, where the contract is to deliver goods at certain periods, in specified quantities, this is in fact a set of different contracts."

The plaintiffs having fixed, by their orders, the times and quantities of delivery, and the contract having, therefore, to be considered as for the delivery at specified periods, in specified quantities, the failure to deliver two hundred tons in the month of September was a breach of the contract, occurring on the last day of the month, the defendants having the entire month in which to deliver. The plaintiffs, it is true, had the right to waive the whole, or any part of the September delivery; but, by waiving, they did not acquire the right to carry it into Oc-

[Johnson & Thornton v. Allen & Jemison.]

tober, and order two hundreds tons for that month, and demand also the deficiency in the September delivery. This would be in opposition to the express terms of the contract, that the delivery, required in any one month, shall not exceed two hundred tons. When the plaintiffs ordered the delivery of two hundred tons in each of the months of September, October, and November, they fixed the periods and quantities of delivery, and exhausted their right to order. To allow a vendee, who has the right to determine the times and quantities of delivery, the right to change at pleasure his orders, when once made, may result in putting the vendor to great disadvantage and injury, and to place him a situation where a breach of his contract may necessarily occur. The presumption should be, that a vendor, intending in good faith to fulfill his contracts, will arrange to meet the orders of his vendee, having been once given, as well as his engagements with others. As a postponement of the early deliveries by agreement, or on request of either party, without a provision that the installments are to accumulate, will operate to carry the postponed deliveries over to a month, in which the entire delivery will not exceed two hundred tons; *a fortiori*, the plaintiffs can not, *at their will*, shift the breaches from time to time, and thus enable themselves to select a period for the occurrence of the breach, when the prices of coal are rated at the highest during the season.

It is the general rule, that on the vendor's failure to deliver the goods according to the contract, the measure of damages is the difference between the contract price and the market price, at the place where, and the time when they should have been delivered.—2 Benj. on Sales, § 1335; *Sleuter v. Wallbaum*, 45 Ill. 44; *Worthen v. Wilmot*, 30 Vt. 555; *Grand Tower Co. v. Phillips*, 23 Wal. 471; *Rose v. Bozeman*, 41 Ala. 678; *Miles v. Miller*, 12 Bush, 134. There are cases in which special damages may be recovered; but no special damages are claimed in this case.

As there was no market price for coal at Coaling, the place of delivery, except that made by the defendants, and as the defendants knew that the coal was purchased to be used in Tuskaloosa, this being the nearest market, the measure of damages is the difference between the market price in Tuskaloosa and the contract price, with the expense of transportation added. *Grand Tower Co. v. Phillips*, 23 Wall. *supra; Ward v. Reynolds*, 32 Ala. 384; *Foster v. Rodgers*, 27 Ala. 606.

Where the goods are to be delivered by installments, and there is a failure to deliver two, or more, or all of the installments, the proper measure of damages is the sum of the differences between the contract and market prices, of the quantity

VOL. LXXVIII,

[Johnson & Thornton v. Allen & Jemison.]

of each installment not delivered, at the respective times of delivery, and the place of delivery; each of the failures to deliver constituting a separate and distinct breach. In an action on a contract for the sale of five hundred tons of iron, to be delivered in about equal quantities in the months of September, October and November, 1871, the vendor having failed to deliver any iron, it was held, that the measure of damages was the sum of the three differences between the contract and market prices of one-third of the entire quantity of iron at the end of the three months respectively.—*Brown v. Muller*, 7 Ex. 319.

In *Roper v. Johnson*, 8 C. P. 167 (L. R.), the defendant agreed to sell to plaintiffs a fixed quantity of coal, at an agreed price, to be delivered during the months of May, June, July, and August. The defendant requested the plaintiffs, on the last of May, to consider the contract cancelled, to which the plaintiffs did not assent; and the defendant having refused, in June, to deliver any coal, the plaintiffs brought the action for the breach, on the 3d of July. The evidence showed that the price of coal had risen during the whole of the month of May, and was still rising at the time of trial, which was in August. It was held: "that, in the absence of evidence on the part of the defendant that the plaintiffs could have obtained a new contract on such terms as to mitigate their loss, the true measure of damages was the sum of the differences between the contract price and the market price at the several periods of delivery, notwithstanding that the last period had not elapsed when the action was brought, or when the cause was tried." Wood's Mayne on Dam. § 206; 2 Benj. on Sales, §§ 1331, 1332, 1333; *Shreve v. Brewton*, 51 Penn. St. 176.

Although one of the propositions asserted in the general charge is in conflict with these rules, we can not reverse on that account. The charge contains several separate and severable clauses, and the exception is to the entire charge. Some parts of the general charge are free from error. In such case, the exception must point out the part of the charge supposed to be erroneous.—*Farley v. State*, 72 Ala. 170.

The court, however, should have given the first instruction requested by the defendant. It asserts the legal propositions, that on the order of plaintiffs for the delivery of two hundred tons of coal, in each of the first and second months of the contract, it was the duty of the defendants to have delivered the coal for each of said months during the continuance of each, and the failure to so deliver was a breach of the contract; and that "the measure of damages is the price of the coal at the time of the breach of said contract, and not at a subsequent time, from which is to be deducted the price which plaintiffs

were to have paid for said coal, if it had been delivered." The charge, construed as an entirety, and in connection with the evidence, asserts the general rule correctly. It might have been prepared with more specific reference to the special aspects of the case, and so as to give the jury a clearer and more definite understanding of the rules by which they were to be governed in assessing the damages; but it was not calculated to mislead the jury, in favor of the defendants. The qualifying words, " *not at a subsequent time*," correctly restricted the inquiry of the jury, in assessing the damages, to the price of coal at the time of the breach. To permit a departure will give the jury a latitude as to the amount of damages, whereby, selecting the time of highest price, they may impose damages in their nature exemplary. The purpose of the rule is to allow the plaintiffs a just compensation for the loss sustained, without regard to the motive of the defendants, and notwithstanding they offer no excuse for their failure to fulfill the terms of a contract, which they were morally and legally bound to perform.

According to the rules herein expressed, when the plaintiffs ordered the delivery of two hundred tons in each of the months of September and October, they were not authorized to order more than one hundred tons to be delivered in November. But it appears that the defendants delivered one hundred and twelve tons in November, and also made deliveries in December and January following, which were accepted by the plaintiffs. Their acceptance of these subsequent deliveries was a waiver, *pro tanto*, of the antecedent breaches. We have had some hesitation in determining what disposition should be made of these subsequent deliveries. It seems that the rule, regulating the appropriation of payments, furnishes the closest and a sure analogy; that is, where there are several demands, or a running account consisting of several items of debit and credit, a general payment, in the absence of any specific appropriation by either party, will, ordinarily, be applied to the discharge of the demands in the order of maturity, or of the items of debit antecedently due in the order of the account, unless facts exist showing that, according to the justice and equity of the case, a different application should be made.—2 Green. on Ev. § 533; *Harrison v. Johnston*, 27 Ala. 445. By this rule, the excess of the November delivery, and the deliveries in December and January, should be appropriated to the satisfaction, first, of the breach in September, and then of the breach in October. We are unable to do more than lay down a general rule, as, on another trial, the court will, no doubt, adopt the construction allowing the defendants until the 12th of October to fill the order for the first month, and until the 12th of November to

fill the order for the second month; and the record does not enable us to ascertain the specific dates of the different deliveries in October and November.

Reversed and remanded.