144 So. 443

**CORTNER et al. v. ANDERSON, CLAYTON & CO. et al.**

**8 Div. 369.**

Supreme Court of Alabama.

Oct. 6, 1932.

Rehearing Denied Nov. 10, 1932.

576

E. W. Godbey and Eyster & Eyster, all of Decatur, for appellants.

A. J. Harris, of Decatur, for appellees.

FOSTER, J.

The general rule is "that in the case of an agreement to do, or refrain from doing any particular act, secured by a penalty, the amount of the penalty is in no sense the measure of compensation; and the plaintiff must show the particular injury of which he complains, and have his damages assessed by a jury." Jemison v. Governor, 47 Ala. 390, 405, citing Sedgwick on Damages, 396, 410.

While the parties to a contract may sometimes agree on a fixed sum as liquidated damages for the breach of a contract, they cannot by so declaring change the nature of a sum really intended as a penalty, nor is it always a penalty because so called if in fact liquidated damages were evidently what was intended. Keeble v. Keeble, 85 Ala. 552, 5 So. 149; 17 Corpus Juris 934, 935; 55 Corpus Juris 1154; Stratton v. Fike, 166 Ala. 203, 51 So. 874; Mansur & Tebbets Implement Co. v. Tissier A. & H. Co., 136 Ala. 597, 33 So. 818; Walshe Mfg. Co. v. W. T. Smith Lbr. Co., 178 Ala. 472, 480, 59 So. 455; Walsh Mfg. Co. v. W. T. Smith Lumber Co., 196 Ala. 371, 72 So. 73; Standard Tilton Milling Co. v. Toole, 223 Ala. 450, 137 So. 13.

And it is said that if the damages can be definitely and certainly ascertained, the sum fixed in the contract as damages will be con-

strued as a penalty, and that in case of a reasonable doubt about whether it should be treated as liquidated damages or a penalty, the court will hold it to be a penalty. Keeble v. Keeble, supra; Stratton v. Fike, supra.

As a general rule where the purchaser of personal property has not paid the price, his damages for the failure to deliver is the difference between the contract price and the market value, when such rule is practicable of operation. And if the purchaser goes into the market and buys such product as cheaply and expeditiously as he reasonably can, the price so paid, and sometimes the expenses thus incurred, are more or less conclusive. Some of the cases are cited in Dominey v. Johnson-Brown Co., 219 Ala. 666, 123 So. 52. Others are Johnson v. Allen & Jemison, 78 Ala. 387, 56 Am. Rep. 34; Cato v. Williamson, 209 Ala. 477, 96 So. 321; Henderson v. McFadden (C. C. A.) 112 F. 389, 395; Id., 128 Ala. 221, 29 So. 640.

In this case the contract, as alleged, provides not only for such damages to be ascertained as measured by the price at which the goods may be obtained, but also for one-half (or one-quarter) of a cent per pound for the cotton so purchased as "a penalty for default." So that the contract provides for that which is ordinarily sufficient to furnish a full measure of compensatory damages and for an additional sum named as a penalty for default. If there is any reason why the compensatory damages may not be definitely and certainly ascertained by the rule of law and the provisions of the contract, it is not so stated either in the contract or in the bill of complaint. In fact, the bill of complaint, as well as the contract, describes it as "a penalty." Complainant cannot therefore expect the court otherwise to treat it. In order that we may do so, the bill should allege that the damages cannot be measured in full by the method otherwise stipulated in the contract and by the rules of law, and in what particular respect that is so, and what particular compensation such amount called in the contract a penalty was so "uncertain or incapable of being ascertained" as to justify a stipulation for a fixed sum to cover it in addition to the damages which are ordinarily sufficient to provide adequate compensation. No attempt is made to do this, and the demurrer addressed specifically to such improper claim for damages should have been to that extent sustained.

It is also claimed that the formula for ascertaining the actual damages is arbitrary, not according to the rule of law, and is therefore itself in effect a penalty. It provides that such damage shall be measured by the difference between the "price of sale and the price at which the cotton of equal quality may be secured for immediate shipment to the place of delivery." While those words are not exactly as the rule is ordinarily expressed, yet we do not think that it was intended to prescribe one different from that which the law fixes. Primarily it is the difference between the sale price and market value at the time and place of delivery. The actual purchase, if made, to take the place of the commodity, must be done as cheaply and expeditiously as reasonably possible, and at the place of delivery if available. When so done that is rather conclusive of the market value. We have cited the authorities.

We think that a proper interpretation of the contract is that the parties intended to apply the rule of law in this respect. It will therefore be so treated. Being so treated, it is not arbitrary nor capricious, and is not to be treated as providing a penalty. And the fact that the claim, for which the law and the contract furnish the rule by which the damages are measured, has not been reduced to a judgment, is not fatal to the equity of this bill. Montgomery & F. Railway Co. v. McKenzie, 85 Ala. 546, 5 So. 322; Jenkins v. Lockard, 66 Ala. 377.

It is not controlled by the cases which hold that if the damages are punitive, or though not punitive are not measured by any fixed standard, a judgment at law must be obtained. Dowling v. Garner, 195 Ala. 493, 70 So. 150; Galloway v. Shaddix, 197 Ala. 273, 72 So. 617; Burnwell Coal Co. v. Setzer, 203 Ala. 395, 83 So. 139; Gunn v. Hardy, 130 Ala. 642, 31 So. 443; Moore v. Carr, 224 Ala. 275, 139 So. 269.

The contract was executed in October, 1929, and provided for the delivery of one thousand bales of cotton during each of the months of October, November, and December of the same year. The bill alleges that no cotton was delivered in December, and that an insufficient amount of the quality specified was delivered in October and November. The obligation related to three separate undertakings, one each month, and a breach of each fixed a separate liability which accrued by its breach on the last day of each month. Johnson v. Allen, 78 Ala. 387, 56 Am. Rep. 34.

But the existence of the contract, which is substantially breached, fixes the status of an existing creditor as of the date of the contract in respect to subsequent transactions, though it was not breached until after such transactions occurred. Smith v. Young, 173 Ala. 190, 55 So. 425; Washington v. Norwood, 128 Ala. 383, 30 So. 405; Scott v. Brown, 106 Ala. 604, 17 So. 731; Yeend v. Weeks, 104 Ala. 331, 16 So. 165, 53 Am. St. Rep. 50; Bragg v. Patterson, 85 Ala. 233, 4 So. 716; Keel v. Larkin, 72 Ala. 493; Jenkins v. Lockard, 66 Ala. 377; Fearn v. Ward, 65 Ala. 33; Anderson v. Anderson, 64 Ala. 403; Bibb v. Freeman, 59 Ala. 612; Foote v. Cobb, 18 Ala. 585.

The conveyances sought to be vacated consisted of four to A. G. (Annie Augusta)

Murphy, dated (two) on December 18, 1929, and one each on January 10, 1930, and January 23, 1930, and also two to the wife of the alleged debtor, dated January 21, 1930, and January 31, 1930, respectively. Pursuant to the principles we have stated, the bill shows that on the date of each transaction complainant was an existing creditor of the grantor. It is therefore sufficient to allege that they were voluntary or without valuable consideration. London v. Anderson Brass Works, 197 Ala. 16, 72 So. 359; Jenkins v. Lockard, supra; Fearn v. Ward, supra; Anderson v. Anderson, supra; Bibb v. Freeman, supra.

And by the same authorities, it is clear that the alternative allegations in respect to the conveyances to the debtor's wife are sufficient. No serious claim is made that they are not sufficient.

The bill also alleges that on January 21, 1930, and February 11, 1930, respectively, the said A. G. Murphy executed to the Central National Bank mortgages, which embrace two of the tracts which had been conveyed to her. Each mortgage recited an indebtedness of a stated sum of money. The bill does not allege that the bank did not advance the amounts named, but it does allege "Central National Bank was a creditor of the said R. G. Cortner in a large sum, and it knew that the said Annie Augusta Murphy was a mere clerk in the office of the said R. G. Cortner, and had been for many years, and knew that she was without financial means, and knew that the said Cortner was fast, be (by) deeds and mortgages, making away with all his tangible property subject to execution, and knew that the said deed from the said R. G. Cortner and his wife, the said Clara A. Cortner, to the said Annie Augusta Murphy were conveyances without consideration, and knew that the said Cortner was heavily involved financially and was being pressed by his creditors, which complainant avers was a fact at the time of such conveyances."

█ It is of course clear that this alleged voluntary grantee could sell and convey the property to a bona fide purchaser and pass a title free from the equitable right of complainant as set out in this bill. But to have that effect, the grantee must, of course, possess the ordinary qualities of an innocent purchaser. That is, he must acquire the legal title, by warranty deed, pay present value, and be without notice, actual or constructive, of the rights of the creditors. Freeman v. Pullen, 130 Ala. 653, 31 So. 451. The burden is upon complainant (this being in equity) to allege that the bank is not such a purchaser, in order to show a right to vacate the deed to it. Pollak v. Millsap, 219 Ala. 273, 122 So. 16, 65 A. L. R. 110; Bank of Luverne v. Birmingham Fer. Co., 143 Ala. 153, 39 So. 126.

█ The presumptions are against the complainant in construing the sufficiency of the bill. So that on this demurrer, we presume that the bank advanced to the mortgagor the cash consideration named, in the absence of a contrary averment. But the bill alleges that the bank knew that the deed to its mortgagor was without consideration and executed by one who was then largely indebted and was making away with his property. It therefore shows that the bank had notice that such deed was void as against existing creditors, and that it was not a bona fide purchaser protected against the rights of such creditors. So that the bill is free from the objections urged by the bank, except as we have noted.

█ If the trade terms and expressions peculiar to business, and not of common knowledge, are alleged to have a defined meaning by the custom of the trade, such meaning is read into the contract. Moss v. Gulf States Steel Co., 224 Ala. 430, 140 So. 402.

█ The bill in this case alleges that "according to the custom of the trade and the understanding of the parties the terms in the contract bear (certain) meaning." We do not think that the terms of the contract that the "price to be fixed by the seller at the time of shipment," as a part of the clause that it would be "thirty-five points off December contracts, New York," had the effect of making the price dependent upon future negotiations nor the discretion of the seller, but upon a condition which was to occur, and when it should, the result was merely a matter of calculation. Such is all that is required to make definite the price to be paid for the commodity. The terms of the contract in this respect bear much resemblance to those held sufficient in the case of South Carolina Cotton Growers' Co-op. Ass'n v. Weil, 220 Ala. 568, 126 So. 637.

We think that the other objections to the bill as argued in briefs are answered by its allegations, and need no comment.

For the error in overruling the demurrer directed to the penalty claimed in the bill, the decree is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

## On Rehearing.

### FOSTER, J.

The bill alleges that though the contract provided for the sale of 3,000 bales of cotton, of which 1,000 were to be delivered in each of the months of October, November, and December, 1929, that during that time 1,556 only were delivered, of which "728 were defective and were rejected by complainant and were by agreement of the parties referred to arbitration as provided for in said Southern Mill Rules, which board of arbitration ruled that

the said cotton did not comply with the grade of cotton specified in said contract. And the said Cortner replaced to-wit 538 bales of said rejected cotton with other cotton and he failed" to ship, to wit, 1,400 bales. And further alleged that 68 bales which he shipped to replace the rejections were also rejected as not being up to specifications, "and which rejection of said sixty-eight bales by agreement of both parties were referred to said board of arbitration as aforesaid, which sustained such rejection, and ruled that said sixty-eight bales were not up to the contract."

 Appellants complain that such allegations in respect to an arbitration are insufficient because they do not show: (a) Notice to him of the hearing by the arbitrators, nor (b) the names of the arbitrators, nor (c) the existence of a controversy or dispute for consideration by an arbitration. But no such objection was made by appellants in their demurrer to the bill. The allegation of an arbitration is not the foundation of the right and claim of complainant, but at most is only evidence to prove that the cotton which was delivered was not of the quality specified in the contract.

If it be conceded that the objections now urged are potent, and that demurrer on such ground would have presented a substantial defect of averment, we cannot say that the bill is subject to other grounds of demurrer because of those defects, for otherwise considered the bill shows a liability to complainant by Cortner, which is the proper basis of a creditor's bill in equity. The alleged arbitration, as submitted and conducted, must, of course, be such as is sufficient in law to be binding on the parties, though there may be an insufficiency of averment. But though not so submitted and conducted, complainant may otherwise establish its claim against Cortner, in so far as appears from the averments of the bill.

Appellants also argue that the bill is defective because it does not allege that at the time of the alleged breach by Cortner, complainant was ready, able, and willing to comply with the contract on its part. Such averment is usually necessary to sustain a suit for the breach of a contract to sell and deliver personal property, when the purchase price is payable on delivery. Long v. Addix, 184 Ala. 236, 63 So. 982; Sloss-Sheffield Steel & Iron Co. v. Payne, 192 Ala. 69, 68 So. 359, 360. While the bill makes claim for such a breach, it also claims damages on account of the delivery of cotton not of the quality embraced in the contract, and which was paid for by complainants. No such averment was necessary as to such claim. The demurrer on this ground was directed to the bill as a whole, and was properly overruled. Davis v. Anderson, 218 Ala. 557, 119 So. 670.

It is also insisted that the bill should now offer to do equity. But after the breach of the contract to deliver, there is nothing due to be done by the purchaser to sustain a claim of damages for the breach, and in that event an offer in the bill now to do equity is not necessary. Davis v. Anderson, supra; Gill Printing Co. v. Goodman, 224 Ala. 97, 139 So. 250.

We have treated the contentions made on application for a rehearing, and we think that they are not sufficient to cause additional reason for a reversal of the decree.

The application is overruled.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.