[Comer v. Bankhead.]

# Comer *v.* Bankhead.

*Application for Mandamus to Warden of Penitentiary.*

1. *General rules for construction of contracts.*—In the construction of a contract, the whole instrument should be considered in determining the meaning of any or all of its parts; the contract should be supported, rather than defeated; all parts should be so construed, if possible, as to give effect and validity to each; and all instruments should be construed *contra proferentem*—that is, against him who gives, or undertakes, or enters into an obligation.

2. *Conduct of parties under contract.*—The conduct of parties under a contract, constituting a practical construction of it given by both parties, is frequently a very important element in the interpretation of contracts which appear ambiguous.

3. *Contract with warden of penitentiary, for hire of convicts; warden's discretion as to delivery.*—Under the contract between J. G. Bass, the late warden of the penitentiary, and J. W. Comer, by which the former hired to the latter one hundred of the convicts in the penitentiary, more or less, whom the hirer agreed to receive, "as may be directed by the said B., at the various jails, or at the walls of the penitentiary, free of charge to the State;" and by which it was provided that, in the event of C.'s failure to perform any of the duties imposed on him by the contract, "said contract may be terminated or annulled at any time, at the option of said B., or his successor in office, after giving due and fair notice, in writing, that the matter complained of has not been remedied;" the provisions which further declare that "said convicts are to be delivered, from time to time, during the existence of this contract, *at the sole option of the said B.*, or his successors in office," and that, "if the said B., or his successors in office, should make demand upon said C., by writing or verbal order, for any convict or convicts in his custody, the said Comer will at once deliver such convicts to the said B., or his successor in office,"—can not be construed as giving the warden a right, at his option and election, to refuse to deliver any convicts under the contract, and thereby avoid it; but were intended to reserve to him a sound discretion as to the delivery of particular convicts to C., or to other contractors, having in view the different kinds of business in which they were engaged, the capacity of the several convicts for any special labor, their character as desperate men or the reverse, and other like considerations; and also to secure the re-delivery of convicts, in cases of pardon, reversal of judgment, &c.

4. *Same; hirer's right to enforce delivery.*—Under the contract thus construed, this discretionary power being reserved to the warden, the hirer could not demand, as of right, that any particular or specified convicts should be delivered to him; and the most the court could do, under the contract, on the application of the hirer, "would be to compel the warden to exercise his discretion under the rules above suggested."

5. *Same; term of hiring.*—The warden has statutory power to contract, with the approval of the governor, for the hiring of the convicts for a term not longer than five years (Code, § 4536); but, under the contract in this case, which was "to take effect on the first day of January, 1881, and to terminate on the first day of January, 1882," the further provision declaring that it "may be continued from year to year, from date the

[Comer v. Bankhead.]

same takes effect, during a period of five years, provided said C. complies fully with its requirements," while reserving the privilege of renewal to the hirer, or making it optional with him, does not reserve to the warden a corresponding privilege; consequently, while the contract is valid for the year 1881, it is not binding as to any subsequent year.

6. *Mandamus; not awarded when nugatory.*—When this proceeding was commenced, in August, 1881, and when the Circuit Court sustained a demurrer to the petition. and when the appeal was taken, and when the cause was argued and submitted, the relator was entitled to relief, as herein above indicated; but, his rights under the contract having terminated on the first day of January, 1882, since past, the writ of *mandamus* will not be awarded.

APPEAL from the Circuit Court of ELMORE.

Tried before the Hon. JAMES E. COBB.

The appellant in this case, John W. Comer, filed his petition, addressed to the presiding judge of the circuit which includes the county of Elmore, praying a *mandamus* against John H. Bankhead, the warden of the State penitentiary at Wetumpka, requiring him to deliver to the petitioner the number of convicts to which he claimed to be entitled under a contract made with John G. Bass, the former warden. The contract between Comer and Bass, which was made an exhibit to the petition, was dated the 22d December, 1880, and approved by the governor on the 4th February, 1881. Its material provisions, so far as involved in this case, are stated in the opinion of the court. The petition alleged, that Comer did not have the full quota or percentage of convicts to which he was entitled under his contract with Bass; that Bankhead, since he had become warden, had delivered some convicts to Comer under his contract, but refused to deliver any more, and was delivering them to R. J. Thornton and others, with whom he had himself made contracts; and "that all of said convicts now in the possession of said Bankhead, or under his control as warden, can not be advantageously employed within the walls of the penitentiary, but only a small portion thereof can be so advantageously or profitably employed." A letter from Bankhead to Comer, dated May 27, 1881, and written in reply to a demand for the delivery of more convicts, was made an exhibit to the petition, containing these expressions: "You will remember that your *pro-rata* has been more than full for some time. I have recently made a contract with Dr. J. R. Thornton, to fill which I am now delivering all convictions." The prayer of the petition was, "that said Bankhead, as warden of the penitentiary, be commanded by the alternative writ of *mandamus* to deliver to your petitioner so many of the convicts now under his control as warden, as petitioner is entitled to claim and receive under his said contract with said Bass, and which, as hereinabove shown, he has failed to deliver to your petitioner, or to show cause, if he can, why he has not done so," &c.

[Comer v. Bankhead.]

The petition was sworn to before the judge of the City Court of Montgomery, on the 10th August, 1881; but it was not presented to Hon. JAMES E. COBB, the presiding judge of the fifth circuit, until the 20th October, 1881, and he thereupon ordered a rule *nisi*, or an alternative writ of *mandamus*, to issue as prayed.    The defendant appeared, in answer to the writ, and demurred to the petition, and also to the alternative writ, assigning the following (with other) grounds of demurrer: 3. "That the delivery of convicts to the petitioner under said contract, as shown by the said exhibit to the petition, was at the sole option of this respondent as warden, and he had the right, by the terms of said contract, to demand at any time the return to his custody as warden of any convicts delivered to the petitioner under said contract; and it appears from said contract that the petitioner did not acquire or secure any right to demand or retain the possession of any convicts, otherwise than at the discretion of this respondent as such warden."    4. That Bass, the former warden, "was not authorized by law to make any contract for the hiring of convicts, whereby such convicts would be placed beyond the custody, control and dominion of the warden, and to deprive the warden of such custody, control· and dominion, and its exercise in such manner as, in his discretion as an officer of the government, the public good demands."    7. "That the object and purpose of said petition and alternative writ, as therein set forth, is to enforce said contract and its execution against the State of Alabama, through this defendant as one of the officers of the executive department, contrary to the constitution and laws of the State."    9. "That it appears from said petition and alternative writ that the matters and things therein alleged, and the relief thereby sought, are matters within the official discretion of this respondent as warden of the penitentiary, and in respect to which this respondent as such warden is not subject to the jurisdiction and control of this honorable court."

The court sustained the demurrer, dismissed the petition, and refused to award a peremptory *mandamus;* and its judgment on the demurrer is now assigned as error.

CLOPTON, HERBERT & CHAMBERS, with whom were RICE & WILEY, for appellant.—1. The warden of the penitentiary has express statutory power to make contracts for the hire of convicts, and the only restriction upon his power is as to the term of hiring, which can not exceed five years.—Code, § 4536. Such contract does not interfere with the general supervisory charge which he is required to exercise over all convicts employed outside of the prison walls; on the contrary, the statutory provisions requiring such supervision become a part of the

[Comer v. Bankhead.]

contract, as if expressly stipulated. When authority to do an act is given, and the mode or manner of executing it is not expressed, a person dealing with the agent is not to be pre-judiced, if the act be within the scope of the authority, although it was not done in the manner desired by the principal.—*Mc-Clung v. Spotswood*, 19 Ala. 171; *Gimon v. Terrell*, 38 Ala. 211. The validity of this contract is established by the de-cision in the former case between these parties.—*Comer v. Bankhead*, at last term.

2. The discretionary power reserved to the warden by the terms of the contract, as to the delivery of convicts, applies only to the time or times at which he may deliver them, bind-ing the hirer to take them when tendered, without regard to his convenience, preparations to employ them, or other business arrangements; and the stipulation as to the re-delivery of any particular convicts, on demand of the warden, was intended only to provide for the exceptional cases which might arise, as from pardon, reversal of judgment, and the like. These pro-visions can not be enlarged, so as to destroy the binding force of the contract, or to enable the warden to terminate it at pleasure. All the parts of the contract are to be considered, in determining the meaning of each, and effect must be given to each, if possible.—*Bates v. Br. Bank*, 2 Ala. 451; *Nesbitt v. Drew*, 17 Ala. 379; *Watts v. Sheppard*, 2 Ala. 425.

3. The proceeding is not a suit against the State, but is against an executive officer, to compel performance of a con-tract which his predecessor had authority to make, and which is equally binding on him. It seeks to compel his official action, but not to control any judicial discretion with which he is clothed by law. No executive officer, certainly none below the governor, is above the compulsory and controlling process of the law, in a matter involving his official action, in which the party complaining has an interest. On the facts stated, which are admitted by the demurrer, a peremptory *mandamus* should have been awarded.—High on Extra. Legal Remedies, § 94; *Railroad Co. v. Moore*, 36 Ala. 371; *Davis v. Gray*, 16 Wal-lace, 203; *Chapin v. Osborne*, 29 Indiana, 99; *Citizens' Bank v. Wright*, 6 Ohio St. 318; *Commonweath v. Atlantic Railroad Co.*, 53 Penn. St. 9; *Griffith v. Cochran*, 5 Binney, Penn. 87; *People v. Walter*, 6 N. Y. 410; *State v. Barker*, 4 Kansas, 379.

TROY & TOMPKINS, *contra*.—1. Under our penal laws, con-victs sentenced to the penitentiary are not regarded as mere chattels, but sworn officers are appointed, whose duty it is to supervise and regulate their labor and treatment, so as to make their imprisonment a proper admeasurement of punishment. This duty is especially imposed upon the warden, and is en-

[Comer v. Bankhead.]

joined and enforced by an official oath and bond; and he can not abrogate it, by transferring absolutely to another, under a contract of hiring, the custody and control of convicts, so as to divest himself of this supervising power and charge. Any contract of hiring, by which this was attempted, would be unauthorized, though not expressly forbidden by the statute which confers the power to hire. The contract on which this proceeding is founded, recognizing this limitation upon the warden's power, expressly reserves to him the sole option and discretion as to the delivery of convicts under the contract, and the right to demand the re-delivery of any one or more at his pleasure; binding the hirer to pay only for those which he actually receives, and during the time he has them in his possession. Such a contract is valid and binding, and not wanting in definiteness and certainty; but it reserves to the warden a necessary discretion, which can not be controlled by *mandamus*.

2. The proceeding is, in substance and effect, a suit against the State, and as such can not be maintained.—*Decatur v. Paulding*. 14 Peters, 497; *United States v. Guthrie*, 17 Howard, 284; High on Extra. Legal Remedies, 106–10.

3. The contract is only valid and obligatory during the year 1881. Mutuality is an essential ingredient of every contract: unless both parties are bound, neither is bound.—*Eskridge v. Glover*, 5 Stew. & P. 264; Chitty on Contracts, 11. Bass had authority to make a contract of hiring, but he had no right to bind the State to deliver convicts to Comer during a period of five years, without a corresponding obligation on Comer's part to take them. The authority of an agent must be strictly pursued, in form as well as substance; and this is particularly true in case of public agents and officers.—*Floyd Acceptances*, 7 Wallace, 666; *Lott v. Brewer*, 64 Ala. 287; *Fisher v. Campbell*, 9 Porter, 210.

4. The petitioner's rights under the contract having terminated, the award of a peremptory *mandamus* would be a nugatory act.—High on Extra. Leg. Rem. § 14; *Ex parte Shaudies*, 66 Ala. 136.

STONE, J.—The contract, out of which the present contention arose, was entered into, or attempted to be entered into, under section 4536, Code of 1876. Under that section, the warden of the penitentiary is empowered "to employ or hire out the convicts, to be used without the walls of the penitentiary, either upon public or private work within the State; all contracts of hiring to be approved by the governor; but such hiring shall not be for a longer term than five years." The present contract was entered into between Bass, the then warden of the penitentiary, and Comer, the hirer; was approved by the gov-

ernor, and was to take effect January 1st, 1881. The contract is most elaborate in its provisions, and guards the interests of the State, and the welfare of the convicts, with most sedulous care. In and by said contract, "the said John G. Bass, as warden of the penitentiary of Alabama, under and by virtue of the laws of said State, do hereby hire to the said J. W. Comer about one hundred convicts (100), more or less, of the Alabama penitentiary, or 14¾ per cent. of the whole number of suitable convicts in the penitentiary ; the said J. W. Comer agreeing to receive, as may be directed by the said John G. Bass, all convicts at the various jails of the State, or walls of the penitentiary, free of charge to the State," &c. One of the main questions argued arises out of two clauses of the contract, which read as follows: "Said convicts to be delivered, from time to time, during the existence of this contract, at the sole option of John G. Bass, or his successors in office. . . . It is further agreed, that if the said John G. Bass, or his successors in office, should make demand by writing, or a verbal order, upon the said J. W. Comer, for any convict or convicts in his custody, the said J. W. Comer will deliver such convicts at once to the said John G. Bass, or his successors in office, or his agent." The argument is, that inasmuch as the contract places the matter of delivery at the sole option of the warden, and inasmuch as Comer bound himself to deliver back, or return to the warden, any convict or convicts in his custody, whenever the same should be demanded, this leaves it entirely discretionary with the warden whether he will deliver, or continue to deliver to Comer, any convicts, or permit them to remain after they are delivered; and having, by the very terms of the contract, the privilege and option not to comply, the court can not coerce him to do that which the contract does not bind him to do. If this be the correct construction of the clauses of the contract copied above, this conclusion would seem to follow.

1-2. In construing contracts, "it is a rule, that the whole contract should be considered in determining the meaning of any or all its parts."—2 Parsons on Contr. 13. "The contract should be supported, rather than defeated.—Ib. 15. "All the parts of the contract will be construed in such a way as to give force and validity to all of them, and to all of the language used, where that is possible."—Ib. 16. "All instruments should be construed contra proferentem; that is, against him who gives, or undertakes, or enters into an obligation."—Ib. 19. So, the conduct of parties under a contract, constituting a practical construction of it given by both parties, is frequently a very important element in the interpretation of contracts that appear ambiguous.—Chicago v. Sheldon, 9 Wall. 50.

3. The contract, in the present case, is most elaborate in its

[Comer v. Bankhead.]

details.    It enumerates and imposes very many duties on the
hirer, and for a failure to perform any one of them provides,
that it "may be terminated or annulled at any time, at the
option of said John G. Bass, or his successor in office, after
giving due and fair notice, in writing, that the matter com-
plained of has not been remedied."    What necessity, we may
ask, for this elaborately prepared provision of the contract, if
the warden could terminate it at any time, by simply calling in
the convicts he had delivered to Comer, and refusing to deliver
any others?    The construction contended for by appellee will
render this last clause, which expressly authorizes rescission for
cause, useless and redundant.    We must construe the whole
contract together, and so construe it, if possible, as to make it
a binding obligation on each party ; not an obligation binding
Comer, leaving the warden free to observe it or not, at his own
option, and with or without a reason.

Construing the entire contract under the rules above de-
clared, and so construing it *ut res magis valeat quam pereat*,
we hold, that the clause first above copied was inserted with no
intention whatever of reserving to the warden the right to de-
stroy the contract by failing to deliver convicts.    It is common
knowledge, that convictions have been, and may be had, in dif-
ferent parts of the State.    The hirer, under the terms of the
contract, bound himself to receive the convicts assigned to him,
either at the penitentiary, or at any county jail, where the convict
might be confined.    The record discloses that the warden made
other contracts, by which he bound himself to deliver convicts
to other hirers.    It is reasonable to suppose, those other hirers
had their business operations in different parts of the State.
Now, some of the convictions would probably be at places
more convenient to one hirer, than to another.    The different
hirers were not probably engaged in the same pursuit, or line
of business.    Some, very many convicts, would be better adapt-
ed to one service, than to another, and some probably not
adapted to any out-door service,    Some lines of service would
probably be less favorable to escapes, than others would be ; and
it is known that some convicts have much more desperate char-
acters than others.    All these considerations suggest—nay, com-
mand—that the warden exercise a sound discretion, in properly
distributing and placing the convicts; and these furnish an am-
ple field for the operation of his option as to the time of de-
livery.    And these same considerations apply, also, to the clause
second above copied.    Other reasons may exist, why the right
to re-call convicts should be reserved in the warden.    Pardons
may be granted, reversals had, or experiment may show the
convict was not adapted to the service he was assigned to.    In
either of these events, a re-call would become necessary and

proper.   We do not think either of these clauses authorized the warden to disregard the obligation to deliver.

4.   We have shown above, that the warden of the penitentiary is clothed with an option in the matter of assigning convicts to the hirer, and we have attempted to express some of the principles on which such option or discretion was expected to be exercised.   It is plain that fitness of the convict to the particular service, and convenience of the convict's place of confinement to the hirer's place of operations, should be classed as among the considerations which should control the exercise of such option.   Having a discretion as to what particular convicts he would deliver, it can not be affirmed that Comer had the right to demand, as of right, that any particular or specified convicts should be delivered to him.   This would be to take away the warden's option and discretion.   The most the court could do, under this contract, would be, to command the warden to exercise his option and discretion, under the rules above suggested.—4 Wait's Actions, 360, 362, 376 ; High on Ex. Leg. Rem. § 42.

5.   We have shown above, that the warden had authority, with the approval of the governor, to hire out the convicts, to be used without the walls of the penitentiary; such hiring not to be for a term longer than five years.—Code of 1876, § 4536. The language of the present contract is :  "This contract to take effect on the first day of January, 1881, and to terminate on the first day of January, 1882.   *       *       *       It is further agreed, that this contract may be continued from year to year, from date the same takes effect, during a period of five (5) years, provided that J. W. Comer complies fully with all of its requirements."   This, under the interpretation of the contract we have given above, was valid and binding for one year. Is it binding for a longer term ?   Is the clause providing for a continuance from year to year, within the power conferred by the statute ?   It is manifest the privilege of renewal was inserted for Comer's benefit, and he alone has the option to claim it or not.   Is this within the delegated power of the warden, or is it one of the implied, incidental powers, necessary to the complete exercise of the granted powers?—Ewell's Evans on Agency, marg. (108); 1 Wait's Actions, 221.

"Although an agent may employ the usual and necessary means of carrying the agency into effect, this rule is limited by the principle, that the acts done are within the scope of the authority conferred on him by the principal; and if the act substantially varies from, or exceeds the authority, in nature, extent, degree, or legal effect, it will not bind the principal." 1 Wait's Actions, 240 ; *Ib.* 224.   Among the incidental powers " are those which enable the agent to employ all the necessary

[Comer v. Bankhead.]

and usual means of executing the principal authority with effect. The reasonableness of the rule is beyond dispute. Its operation has no effect in weakening the salutary principle, so much insisted upon in the law-books, to the effect that an authority must be strictly pursued; and this fact was fully recognized at an early period."—Ewell's Evans on Agency, 142, 154, 205, 211, 235, pages 145 to 167 in margin; 1 Parsons on Contr. 50; *Taylor v. White*, 44 Iowa, 295; *Durer v. Evans*, 59 Ind. 454. The same doctrine, in substance, has been asserted in this State.—*Cox v. Robinson*, 2 S. & P. 91; *Fisher v. Campbell*, 9 Por. 210.

It would seem almost unnecessary to comment on the difference between the contract the statute empowered the warden to make, and the terms of the one shown in this record. A contract, *ex vi termini*, imports a mutual agreement between two or more parties; and to be binding on one, must be equally binding on the other.—*Eskridge v. Glover*, 5 S. & Por. 264; 1 Brick. Dig. 376, §§ 13, 14, 15; 1 Chitty on, Contr. 11. In making such contract, each party assumes fixed and defined obligations, or acquires or parts with property rights. There are some exceptions to this rule, but they do not affect this case. The warden had the statutory power to let convicts to hire. This included the authority to stipulate the number or percentage of the convicts to be let, the price or wages to be paid, and the duration of the contract, with many details not necessary to be noticed here. Such contract, when concluded, would secure, during the whole term, a proper delivery to the hirer of his share of the convicts, his obligation to receive them whenever, and as often as tendered, and his debt and duty to pay the agreed hires or wages at maturity. No matter what fluctuations there might be in values, what changes in the prices of labor, each contractor would be alike bound to observe and keep his contract. Under the contract actually agreed upon, while the State bound itself to deliver convicts to Comer at the prices agreed upon, during the whole term of five years, if Comer so elected; yet, if by financial pressure, or other cause, Comer desired to be relieved from further compliance with the contract on his part, he had but to say so, and he would stand discharged therefrom at the end of any given year. The statute authorized the making of a contract. The writing conferred on Comer the option, after the first year, of saying whether or not there should be a contract, and reserved to the warden, acting for the State, no corresponding privilege. Coming to this conclusion, we need not determine whether or not the writing can be treated as a contract for any of the years except the first.—See *Eskridge v. Glover, supra*. If it is not a contract, then the relator has no clear legal right he can enforce by *mandamus*. If it is a contract,

[Edwards v. Williamson.]

then it is not such an one as the statute authorized the warden to make, and it can not be enforced. There was, then, a valid contract for only one year, which expired January 1st, 1882, now past.

6. When these proceedings were instituted—August, 1881 —the relator was entitled to the relief hereinabove indicated. He was also entitled to relief when the Circuit Court pronounced judgment on the demurrer, when the appeal was taken, and when the cause was argued and submitted to this court for decision. The time has now expired within which the warden was authorized to deliver any convicts under the contract. The consequence is, that no writ of *mandamus* can be awarded.

The judgment of the Circuit Court is reversed, at the costs of the appellee; but, inasmuch as the term of the contract has expired pending the litigation, a judgment will be here rendered, denying the prayer of the petition.