# Henderson v. Murphree.

*Bill in Equity for Settlement of Partnership Accounts.*

1. *Liquidated damages, or penalty.*—The complainant, who had been a clerk for the defendants, and was without capital, and had been addicted to excessive indulgence in intoxicating liquors, was

taken into partnership by the defendants. A few months after the partnership was formed he became intoxicated. After he had become sober, he entered into a written agreement with the defendants to abstain altogether from the use of intoxicating liquors, and that if he violated this agreement, the contract of partnership was to be thereby terminated, and that in such case he should thereafter have no interest in the partnership, and would accept, in lieu thereof, a stipulated salary from the time the partnership commenced to the time of the violation of such agreement. *Held*, that the provision for the forfeiture of the complainant's interest in the partnership in case of his becoming intoxicated was one for liquidated damages, and not a mere penalty.

APPEAL from the Chancery Court of Pike.

Heard before the Hon. JERE N. WILLIAMS.

This was a bill by W. H. Murphree against J. D. Henderson and J. C. Henderson, for a partnership settlement and accounting. The bill shows that the complainant, who had no capital of his own, was taken into partnership by the defendants, at the time and under the circumstances stated in the opinion; and that the partnership contract was modified in June, 1894, as indicated in the opinion, the stipulation there referred to being as follows: ''It is expressly understood and agreed that this partnership is formed for the purpose of carrying on a mercantile business, and each of the managing members thereof (J. D. Henderson and W. H. Murphree) is expected to do what he can to promote its interests. And it is further agreed and expressly understood that, as the said Wm. H. Murphree is strongly addicted to the excessive use of spirituous, vinous and malt liquors, he, the said Wm. H. Murphree, shall abstain altogether from the use and indulgence in the same in any form or quantity. And if, in this respect, the said Wm. H. Murphree shall violate this agreement, it is hereby expressly agreed that he shall forfeit to the said J. D. & J. C. Henderson all of his rights and interests in the profits that may have accrued in the said business up to the date of the violation thereof, or any profits that may accrue thereafter, and any and every interest he may have in said business, and shall cease to have any connection with said business in any manner; but he is to receive for the services he may have rendered in the said business the sum of $83.33-100 per month, commencing from October 1st, 1893, up to the time he violates this contracs, less what he may have

already drawn out of said business. And in addition thereto, it is agreed that the said J. D. & J. C. Henderson shall pay the unpaid assessment of $47.50 due the Building & Loan Association in which the said W. H. Murphree's house is encumbered preceding the said violation." The bill further averred that the firm did a large and profitable business, and that on December 1, 1894, the net profits of the firm were about $12,000; that a few days after December 1, 1894, the complainant again became intoxicated, but was, at the time, away from his place of business; and his intoxication was of short duration, and that no injury or damage resulted from said drunkenness to the business; that after he became sober he returned to the place of business of the firm, and was notified by J. D. and J. C. Henderson that he had forfeited his rights under said contract in the partnership business, and they denied and refused to allow him to participate in the business as a partner. It was further averred in the bill that it was the object and intention of incorporating the fourth paragraph in the said contract "to secure said J. D. & J. C. Henderson against loss or injury to the said business by the use of intoxicating liquors by complainant, and when it accomplished that end all purposes for which it was inserted in said contract were met, and he [the complainant] avers that if any injury resulted by reason of his intoxication in December, 1894, it was so small, and of such little consequence, that it would be against all good conscience and equity to allow the same to warrant a forfeiture of complainant's interest in said profits·" The defendants demurred to the bill on the following grounds: "1st. Complainant admits that he voluntarily entered into and executed the partnership agreement or contract dated June 11th and 12th, 1894, by which the old partnership agreement was altered and changed. 2nd. Complainant admits that a few days after Dec. 1st, 1894, he became intoxicated, and thereby violated the partnership contract. 3rd. Complainant does not anywhere in his bill show any reason why he should be exempt from his liability for the violation of his contract, which is fixed in said contract. 4th. The contract provides for the termination of the partnership agreement, if W. H. Murphree shall use intoxicating liquors to any amount prior to the time fixed in said

agreement. For aught the court could know, the complainant elected to take the $83.33 per month and the payment. of $47.50 on the mortgage on his house as a certain compensation, rather than, take his chances of realizing anything out of the profits of the business." The defendants appeal from a decree overruling the demurrer.

R. L. HARMON and W. L. PARKS, for appellants, cited *Smith v. Snider*, 82 Va. 614; 3 Brick. Dig. p. 152, § 146; *Williams v. Glover*, 66 Ala. 189; *Mobile Building & Loan Association*, 85 Ala. 382; *Keeble v. Keeble*, 85 Ala. 552; *Smith v. Bergengren*, 10 L. R. Av. 768; *Wallis Iron Works v. Monmouth Park Ass'n*, 19 L. R. An. 456; *Kelso v. Ried*, 27 Am. St. Rep. 716; *Jones v. Robbins*, 50 Am. Dec. 595; Pomeroy's Eq. Jur. §§ 449, 450, 452, 457.

M. N. CARLISLE, *contra*, cited *Keeble v. Keeble*, 85 Ala. 552.

HARALSON, J.—The contention here is, whether the agreement between the appellants and appellee, as set out in the abstract, provides for a penalty or for liquidated damages, in case the appellee, during the existence of the partnership, violated the written agreement between him and his partners, the appellants, to abstain altogether from the use and indulgence in spiriuous, vinous and malt liquors in any form or quantity.

It is difficult, if not impossible, to lay down any one or more rules which will be a test by which all cases of the kind are to be determined, for in many cases a great number of considerations are to be considered in reaching the real intention of the parties. But it is agreed on all hands, that where the true intention of the parties, who are legally competent to contract, is clear and unmistakable, the courts will give it effect; for it is a universally admitted principle that in construing any contract, whether oral or written, the first and controlling inquiry is to ascertain the intention of the parties and give it effect, in the sense in which they mutually understood it, at the time it was made; and courts will not relieve them from the hardships of hard or improvident bargains, if made.—*McPherson v. Harris*, 59 Ala. 620; *Williams v. Glover*, 66 Ala. 189; *Evington v. Smith*,

*Ib.* 401; *Comer v. Bankhead,* 70 Ala. 136; *Mason v. Alabama Iron Co.,* 73 Ala. 270.

In the case of *Keeble v. Keeble,* 85 Ala. 552, this court had occasion to consider the question here presented, and laid down many rules, as formulated from the authorities, for the consideration of courts in determining it. Among the rules formulated, are those that "Whether the sum agreed to be paid is out of proportion to the actual damages, which will probably be sustained by a breach, is a fact into which the court will not enter on inquiry, if the intent is otherwise made clear, that liquidated damages and not a penalty is in contemplation;" and "When the agreement is in the alternative, to do one of two acts, but is to pay a larger sum of money in the one than in the other, the obligor having his election to do either, the amount thus agreed to be paid will be held liquidated damages and not a penalty." In another and the concluding test there stated, the court added, that "in applying these rules, the controlling purpose of which is to ascertain the real intention of the parties, the court will consider the nature of the contract, the terms of the whole instrument, the consequences naturally resulting from a breach of its stipulations, and the peculiar circumstances surrounding the transaction, thus permitting each case to stand, as far as possible, on its own merits and peculiarities." Another rule, as stated by Wood in a note to Mayne on Damages, 203, is "that where the damages are uncertain, and not susceptible of ready ascertainment, and the sum fixed upon as damages is not unreasonable and unconscionable in view of the probable damages, and, from the whole contract and surrounding circumstances, appears to have been the intention of the parties, such sum will be treated as liquidated damages; but when the damages are certain and susceptible of ready ascertainment, or where the sum fixed upon is out of all proportion with the probable damages, it will be treated as a penalty."—*Kelso v. Reid,* 145 Penn. St. Rep. 606; s. c. 27 Am. St. Rep. 716, and note. And again, it is held, that "where a sum of money, whether in the name of a penalty or otherwise, is introduced into a covenant or agreement merely to secure the enjoyment of a collateral object, the enjoyment of the object is to be considered as the principal intent

of the deed or contract, and the penalty only an access-
ory, and, therefore, only to secure the damages really
incurred." See note to *Williams v. Vance*, 30 Am. Rep.
28, 29. But when the purpose is clear, it is said there
seems to be no reason to hesitate to give it effect —
Sedgwick on Damages, 421; *Dankins v. Williams*, 17
Wend. 447; *Keeble v. Keeble, supra*.

The main facts in this case are so certain and undis-
puted that there can be no possible uncertainty or am-
biguity about them. The defendants had reasons to be-
lieve that complainant had reformed from his former
habits of intemperance. They had, from the 1st of Oc
tober, 1892, as it would seem, been employing him as a
clerk. They proposed, on the 14th of March, 1894, to
interest him in their business, not for the purpose of en-
couraging him, simply, to keep sober, though that might
have been incidental to the arrangement, but to secure
his interest in and services to their business. The sup-
posed pecuniary benefit to accrue to each was evidently
the moving consideration. This conclusion finds sup-
port in the fact that on March 14th, 1894, the date of
the partnership, he was offered an interest in a business
with J. M. Henderson, another relative. The offer of
defendants, therefore, may be regarded as having been
made from a pecuniary and business point of view, to
keep him from leaving them and going into the service
of another. It cannot be said that the provisions in the
contract against complainant's use of intoxicating li-
quors was merely to secure his sobriety for his own ben-
fit, and that this must be considered as the princi-
pal intent of the agreement, and that the forfeiture pro-
vided was merely accessory thereto, intended as a pen-
alty to secure only the damages to defendants that might
accrue from complainant's breach of the agreement.
Defendants knew that complainant had been addicted to
the destroying vice of intemperance, and had, as he
himself avers in the bill, lost and squandered a hand-
some fortune in consequence. So, after having, from
interested pecuniary motives, taken him in as a partner,
and having every expectation, no doubt, that he would
continue to remain sober and attentive to business, how
great must have been their disappointment when, on the
1st of June, following their partnership contract in
March, he should have turned up intoxicated, just at the

wrong time? Defendants could not stand that. It portended too much damage to them; and when complainant had sobered, they made the plain, fair proposition to him we find embodied in their mutual written agreement, which he accepted. In this, they required that he should abstain altogether from the use and indulgence in spirituous, vinous or malt liquors in any form or quantity as a condition to his continuance in the partnership, and this independent of any damage he might or might not occasion to the defendants by his violation of the contract in this respect. This was a condition they had a right and an interest to provide against. They knew the disaster that might come from a drunken partner, who had already squandered his estate in a dissipated life, and that he might do, in a day or night, or in a short time, far more damage than his services were worth in a year. They made, and he, in good faith no doubt, accepted the proposition submitted in the alternative, that he should bind himself to drink no more, and if he did, the contract of partnership was to be thereby terminated; that, in such case, he should thereafter have no interest in the partnership, whatever, and would accept, in lieu thereof, the wages of an employe for his services, at $83.33 per month, from Oct. 1st, 1893, when the business commenced, up to the time of his violation of the contract, less what he might have drawn out from the business meantime, and $47.50 to pay for the mortgage on his house. He violated the agreement on the 1st of December, 1894, and defendants simply stood on the letter of the contract, to hold him as no longer interested in any of the business or profits of the partnership, but to pay him for his services as provided, which sum, by his deliberate violation of the agreement, he elected to take, in the place of profits. The agreement was fair, on a valuable consideration, so plain that no man in the world can construe it to be doubtful or ambiguous, and on every principle of justice he must abide by it. To hold otherwise would be to set aside the agreement the parties intended to make and did make, and make another for them, which they did not make. This cannot be done. The damages to accrue from plaintiff's violation of his agreement were not certain. They may have been very great, or very small, or none at all, owing to circumstances. In view of the

[Wooten *et al.* v. Steele *et al.*]

possible or probable injury he might occasion by its violation, the requirement that he should give up his interest in the partnership and accept the pay stipulated, in that event, for his services as a clerk, was not unreasonable or unconscionable, but just and wise to have been made. No fraud or imposition is suggested, the intention is clear, and every reason, therefore, under the authorities referred to, for holding this provision as a penalty in the nature of a security for no more than the actual damage that might accrue to defendants from a violation by complainant of his agreement departs, and the theory on which the bill is filed is without foundation. That such was the intention of the parties is absolutely foreclosed by the writing itself. The demurrer interposed to it was good, and should have been sustained, or the bill dismissed for want of equity. If there is any way to amend it, under the agreement set out, so as to give it equity, we fail to discover it. A decree will be here rendered reversing the decree of the Chancery Court overruling the motion to dismiss for want of equity, and dismissing the bill.

Reversed and rendered.

