# Walshe Mfg. Co. *v.* W. T. Smith Lumber Co.

## *Assumpsit.*

(Decided April 18, 1912. Rehearing denied June 29, 1912.
59 South. 455.)

1. *Sales; Action for Price; General Issue; Proof.*—Where the action was for the agreed price of a dry kiln apparatus, guaranteed to stand a certain test under a certain steam pressure, and defendant pleaded the general issue, with leave to give in·evidence any matter that could be specially pleaded, with like leave to the plaintiff, it was competent for defendant to show that it had furnished steam for the test as agreed, and that the failure of the apparatus was not due to the steam supply, but was due to inherent defect in the apparatus.

2. *Same; Evidence.*—Where the action was for the agreed price of a dry kiln apparatus guaranteed to do certain work in two days, it was competent to show that it required six days to do such work, but not competent to show that the buyer's old apparatus did the same work in five days.

3. *Same.*—It was not competent to permit questions to a witness whether, in his opinion, the failure of the apparatus to stand the test was due to the buyer's failure to supply steam at the agreed pressure, rather than to inefficiency of the apparatus, as such questions called for matters which were for the jury to determine from the testimony of witnesses who saw the test, and·also because such questions left it to the witness to construe the contract.

APPEAL from Butler Circuit Court.

Heard before Hon. A. E. Gamble.

Action by the Walshe Manufacturing Company against the W. T. Smith Lumber Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Count 1 is as follows: "Plaintiff claims of defendant the sum of $1,750 as damages for the breach of an agreement in writing, made and entered into by and between the plaintiff and defendant on, to wit, the 1st day of October, 1908, which said agreement is in words and figures as follows, to wit: 'Proposal. From the Walshe Manufacturing Company, Pittsburg, Penn., October 1,

1908, to the W. T. Smith Lumber Company, Chapman, Ala., Butler County—Gentlemen: We, the Walshe Manufacturing Company, do hereby propose and agree to furnish a partial equipment of W. & W. patent dry kiln apparatus f. o. b. shipping point (consisting of one vacuum-producing fan sufficient in size to operate the four departments of dry kiln building as herein mentioned), and license to use system in connection with four departments of your present dry kiln building to be reconstructed by you under our plans and instructions. Each compartment being————feet long, and————feet wide inside and————feet high above rails, arranged with three track rails and for crosswise piling; to include plans and instructions for the reconstruction of building and the installation of apparatus under our patents. It is agreed that you are to install above named partial equipment (in accordance with our instructions) in connection with your present system in one or more departments as you desire for the purpose of test; said test to continue for a period of time not exceeding sixty days from date, the kiln is ready to operate. At the expiration of the sixty days' test, should the results obtained by the use of our system fulfill our guaranty as hereinafter mentioned, you are to pay us at once, as consideration for the above-mentioned apparatus and license to use same in the four departments aforesaid, the sum of one thousand seven hundred and fifty dollars ($1,750.00). Also an additional sum of four dollars ($4.00) per day, transportation and board for our mechanic to supervise the installation and starting test of kiln. It is understood that the reconstruction of building is simply to consist of constructing center air flue, bulkheads or walls crosswise of kiln near center of kiln; also returning air flue to return moisture to kiln. It is further understood that

there is to be no change in the piping system. Guaranty: We guarantee the material and workmanship of the above-specified partial equipment to be first class in every particular, and we further guarantee that when the kiln is reconstructed in strict accordance with our plans and operated as per our instructions and furnished with steam at 60 pounds pressure at kiln to be capable of drying 1 inch by 16 feet pine lumber in 48 hours (said kiln to be kept in continuous operation 24 hours per day), without adding to any defects the stock may have when placed in the kiln, such as checking, mildewing, molding, or discoloring, and the material so dried will not warp or twist to any greater extent than by out door piling. It is understood that you are to furnish all the necessary material for testing capacity of the kiln, material to be green from the saw when placed in the kiln. Summary: It is agreed that you are to furnish, in connection with all the material now being used in the present kiln, engine of sufficient capacity to operate the above-named fan, and labor to reconstruct the building to receive the additional apparatus and the necessary labor for installing the circulating system, etc.; also furnish steam connection from boiler to engine, all in accordance with our instructions and to fully test the kiln in accordance with directions to be furnished by us. In the event of the failure of the kiln to do the work as guaranteed, you having given us due notice in writing to that effect and afforded us the opportunity of making any necessary corrections, and after such corrections the kiln should still fail to work as guaranteed, you are to reload the material furnished within ten days and return to us. Upon receipt of bill of lading covering the shipment of same in good condition, we will refund all money covering freight charges paid by you, and also the amount of any cash

payments made to us, and further responsibility on our part shall cease. It is agreed that, should you violate any of the provisions of this agreement, then the right to return apparatus shall be forfeited and you will pay to us as liquidated damages the sum of money herein specified under the heading "Price," the same as though you had volunteered your acceptance in writing. Liability: The purchasers are to assume all liability of loss from fire or other sources from the time of delivery of the apparatus. Date of shipment is contingent upon strikes, accidents, delays of carriers or other causes unavoidable or beyond our control. Shipment: Shipment will be made on or about October 15, 1908. Limitations: There are no conditions regarding the proposal other than expressed herein.' This contract was signed by the Walshe Manufacturing Company by its general superintendent, after which was the following provision: 'We hereby accept the above proposition with services of superintendent, and agree to be bound by all the terms and conditions. Please ship to us at Chapman, Alabama. [Signed] W. T. Smith Lumber Co., J. G. McGowin, Secretary.' Plaintiff avers that said agreement had been broken by defendant in this: That the plaintiff, in accordance with the terms of said agreement, did furnish and ship to the defendant the vacuum-producing fan named and described in said agreement, and installed the same, in accordance with the terms of said agreement, but that the defendant has failed to pay said sum of $1,750 for the same and license to use same, in accordance with the terms of said agreement, and that said sum of $1,750 is due and unpaid."

The third count adopts the first count down to and including the agreement or contract, and adds: Plaintiff avers that in and by the terms of said contract it

was agreed that, should the defendant violate any of the provisions of said contract, then the right to return apparatus should be forfeited, and defendant should pay to the plaintiff as liquidated damages the sum of money specified in said contract for said apparatus, the same as though the defendant had volunteered its acceptance in writing. And plaintiff avers that the defendant did violate the provisions of said contract in this: That in and by the terms of said contract there was the following guaranty: [Here follows guaranty as set out in contract.] And plaintiff avers that the defendant violated said guaranty and the terms of said contract by failing to furnish steam at 60 pounds pressure at the kiln, so as to permit the drying of pine lumber in accordance with said guaranty. Wherefore plaintiff says the terms of said agreement were violated by the defendant, and plaintiff thereby became entitled to liquidated damages herein claimed, together with interest thereon."

The first count was afterwards amended by striking out all of the last paragraph thereof, and substituting therefor the following: "And plaintiff avers that said agreement has been broken by the defendant in this: That the plaintiff, in accordance with the terms of said contract, did furnish to the defendant the partial equipment of W. & W. patent dry kiln apparatus mentioned and described in said agreement, and did also furnish plans and instructions to defendant for reconstruction of its dry kiln building, and for the installation of said apparatus, in accordance with the terms of said agreement; but that the defendant has failed to pay said sum," etc., concluding as in count 1.

Count 3 was afterwards amended by striking out therefrom the words beginning, "and plaintiff avers that the defendant violated said guaranty," to the con-

clusion thereof, and inserting in lieu thereof: "And plaintiff avers that, although it furnished to the defendant the partial equipment of W. & W. patent dry kiln apparatus, and plans and instructions for the reconstruction of defendant's dry kiln building, and the installation of said apparatus, in accordance with the terms of said contract, the defendant violated said guaranty and the terms of said contract by failing to furnish said steam at 60 pounds pressure at the kiln, so as to permit the drying of pine lumber in accordance with said guaranty." And concludes as does the third count before amendment.

The fourth count is the same as the first down to and including the contract, then sets out the substance of the guaranty, and avers the failure, after said apparatus was installed, and after it was claimed that it failed to work as guaranteed, of the defendant to reload the material furnished by the plaintiff to the defendant, and to return same to the plaintiff, and allege a retention by the defendant of the material; wherefore liquidated damages are claimed.

The fifth count sets up the contract and the guaranty, and alleges a compliance by plaintiff with all the provisions of said contract, and further alleges that after said apparatus had been installed, and after the defendant claimed that it failed to work as guaranteed, that the defendant failed to reload within 10 days the material so furnished, and to ship same to the plaintiff.

The following charges were given at the instance of the defendant:

(4) "The court instructs the jury that, if they believe from the evidence that defendant made two tests of plaintiff's circulating fan strictly under the directions of plaintiff, and after each test gave written notice to plaintiff of the failure of the kiln to give the results

guaranteed by plaintiff in said agreement, and that after such notice of the failure of said kiln the plaintiff either requested or consented that defendant should retain plaintiff's said apparatus for future tests, and that under such agreement defendant did retain said apparatus, the plaintiff thereby waived the promise of defendant to return said apparatus within 10 days after the failure of the kiln to fulfill plaintiff's guaranty in said agrement."

(5) "The court instructs the jury that, if they believe from the evidence that the defendant reconstructed its dry kiln building and installed therein plaintiff's circulating fan and prepared for the starting test under the supervision of the mechanic furnished by plaintiff; that defendant tested plaintiff's said circulating fan by operating the kiln for more than 48 hours continuously for 24 hours per day under 60 pounds pressure at the kiln, and that said kiln failed to dry 1 inch by 16 feet of pine lumber in 48 hours; that defendant gave written notice to plaintiff of the failure, under said test, to dry lumber of said dimensions in 48 hours; that plaintiff sent its agent to make necessary corrections in said kiln; that defendant, after such corrections were made, again tested said kiln under the same conditions by operating the kiln 24 hours per day continuously for more than 48 hours under a steam pressure at the kiln of 60 pounds, and that in said test the kiln failed to dry lumber of said dimensions in 48 hours; that defendant gave notice in writing to plaintiff of the failure of said kiln to dry said lumber, so as to fulfill the guaranty of plaintiff in the written agreement on which this suit is founded, and that either at the request of or by the consent of plaintiff defendant retained the material of said circulating fan for further tests—they must find for the defendant."

[Walshe Mfg. Co. v. W. T. Smith Lumber Co.]

POWELL & HAMILTON, and O. A. LANE, for appellant. The leading case on the difference between liquidated damages and a penalty is *Keeble v. Keeble*, 85 Ala. 556. Applying the principles in that case to the contract under consideration, it is insisted that the liquidated damages provided for in the contract are in no sense penalties.—13 Cyc. 90. Counsel discuss assignments of error relative to evidence, but without citation of authority. Council also discuss charges given for the defendant, and insist that under a proper construction of the contract the charges were erroneous.—*Foley v. Felrath*, 98 Ala. 176; *Allen, et al. v. Maurey & Co.*, 66 Ala. 17; *House v. Beak*, 33 Am. St. Rep. 307; 18 la. 477; *Main v. Griffin*, 141 N. C. 43.

L. M. LANE, for appellee. Rule 5 as laid down and insisted upon in the case of *Keeble v. Keeble*, 85 Ala. 552, furnishes no true test for determining the matter at issue. The contract is governed rather by rules 6 and 7 in said case.—*M. & T. I. Co. v. Tissier A. & H. Co.*, 136 Ala. 600. Where a manufacturer sells his goods for special uses there is an implied warranty that the article is suitable for the use for which it is sold even if there be no express warranty.—*Troy Groc. Co. v. Potter, et al.*, 139 Ala. 359, and authorities cited. The court therefore committed no error in sustaining demurrers to the 3rd, 4th and 5th counts of the amended complaints. Counsel discuss the evidence objected to but without citation of authority. Counsel also discuss the charges given for defendant, but without citation of authority.

SAYRE, J.—In count 1 of the complaint, appellant sought to recover of appellee the agreed purchase price of a dry kiln apparatus. Count 2 may be laid out of

view. [In counts 3, 4, and 5 appellant sought damages for alleged breaches of a contract by which plaintiff was to sell to defendant the apparatus with a certain guaranty as to its efficiency; defendant undertaking on its part to observe certain conditions in testing the kiln and in returning it to plaintiff, if it proved less efficient than the plaintiff guaranteed it would.] The contract was in writing, and is set out at length in each count of the complaint. [In each of these counts in question, plaintiff claims the liquidated damages stipulated in the contract together with interest thereon. The so-called "liquidated damages" were fixed in the contract at a sum equal to the agreed purchase price of the apparatus. The question properly raised by the demurrers, and the contention of leading importance on this appeal, is whether the stipulation for the payment of the sum of $1,750 in the event defendant should breach the contract, or fail to return the apparatus within the time limited, will be treated by the court as a provision for liquidated damages, as denominated in the bond, according to plaintiff's claim, or as a penalty, the legal effect of which was to secure such actual damages as plaintiff might suffer, as defendant holds it was.

A number of artificial rules, which are considered to be of service on most occasions of this sort, were formulated by this court, in *Keeble v. Keeble,* 85 Ala. 552, 5 South. 149, in substantial consonance with their statement in the books generally. Of course, the object of all interpretation of written instruments is to determine the real intention expressed by the parties. In respect of whether the parties intend by an agreement for fixed damages to secure the pound of flesh, or only just compensation for a breach, the law courts, acting on that principle of equity which looks to intent, rather than outward form, have long denied conclusive effect

to the terminology of the contract. Looking to the
whole instrument and surrounding facts and circum-
stances, if it appears that the parties have, in good
faith, contracted for the actual amount of the loss as
estimated in advance, the contract is held to be one for
liquidated damages; while, if they have contracted for
an arbitrary sum, intended to coerce performance or
punish default, they are held to have contracted for
a penalty.—2 Page, Contracts, § 1173; *Williams v.
Vance*, 9 S. C. 344, 30 Am. Rep. 26, and note. Looking
to the substantial parts of the contract in question, we
find it to mean that plaintiff sold the apparatus with
a guaranty that it would do a certain work, but that
defendant's acceptance was to depend upon the result
of a practical test of its capacity, and that, in order that
the test might be fairly conditioned for plaintiff's ap-
paratus, defendant assumed to do a number of things,
among them to furnish steam to the kiln during the
test at a pressure of 60 pounds. If the apparatus, on
a test had under agreed conditions, failed to demon-
strate its contract capacity for the work desired of it,
defendant was to put it on its way back to plaintiff by
loading the material of which it was constituted on the
cars, in good condition, and within 10 days from its re-
jection for cause. The contract provided: 'It is agreed
that, should you [defendant] violate any of the pro-
visions of this agreement, then the right to return ap-
paratus shall be forfeited and you [defendant] will pay
to ,us [plaintiff] as liquidated damages the sum of
money herein specified under the heading 'Price,' the
same as though you had volunteered your acceptance in
writing." It seems to be questioned whether this pro-
vision was intended as an alternative agreement by
which defendant had a choice, either to afford the re-
quired conditions for a fair test, and to return the ap-

paratus within a limited time in the event the apparatus failed to stand the test, or to pay the purchase price without regard to the result of the test, in the event of which interpretation no question would arise as to whether the sum stipulated was a penalty or liquidated damages, or whether, on the other hand, the intention was merely to coerce defendant's compliance with its collateral agreements, in which event it would be necessary to determine the nature of the sum stipulated, whether penalty or liquidated demages. But this was no alternative contract. "An alternative contract is one which gives to one of the parties the choice of doing one of two or more different acts as a performance of the contract. If one of the alternatives is the payment of money, a contract of this type has some resemblance to a contract for a penalty, or for liquidated damages; but it must be distinguished from both of them. The essential difference is that both penalties and liquidated damages are payable on breach of one or more covenants of a contract; whereas the payment provided for in the alternative contract is a performance of the contract—not a compensation for breach." —2 Page, Contracts, § 1168. It would be anomalous and untrue to reason to hold that a party may perform a contract by breaching it and then paying for the breach.—*Smith v. Bergenren*, 153 Mass. 236, 26 N. E. 690, 10 L. R. A. 768. But that would be the effect of holding that payment of the sum stipulated in the quoted provision of the contract was intended as an alternative means of performing the contract. So it would seem clear that plaintiff's purpose in exacting the collateral agreements required of defendant, and defendant's intent in yielding them, was to secure a test of the apparatus under certain conditions, and a prompt return, in one event, of the test, by providing, in case

of a breach, for damages in the way, either of a penalty, or liquidated damages. And so the plaintiff itself has considered in the counts in question; for it is claiming damages for a breach—not a sum due under the contract.

Apart from its undertaking to pay the agreed price upon a favorable issue of the test, defendant's obligations under the contract are to be found in two different subsidiary and collateral stipulations incorporated into the writing to serve two distinct purposes, to wit: A test of the apparatus under agreed conditions; a prompt return of the material of the apparatus if it should fail. But the damages for a breach of either was fixed at a sum specified, and called "liquidated." The necessary effect of counts 3, 4, and 5 is to treat the contract as not having been so far executed as to vest in plaintiff a right to the agreed purchase price. That phase of plaintiff's case was stated in count 1, as to which the ruling was favorable to plaintiff. The counts now in question claim, as we have in effect said, not the agreed price of an apparatus delivered, tested, and found efficient according to agreement, but an equivalent sum as liquidated damages for alleged breaches of stipulations intended to secure immediately things other than the payment of the purchase price. It does not appear that the considerable consequences to plaintiff of a breach of either of the special collateral stipulations to furnish steam at the required pressure, a breach of which is alleged in count 3, or to load upon the cars in good order within 10 days after rejection, a breach of which is averred in counts 4 and 5, were different, or that they were wholly uncertain, or incapable of being ascertained save by conjecture. In either case, under the contract, defendant forfeited the right to return the apparatus, which means, of course, that plain-

tiff might treat it as the property of defendant, without regard to whether it would do the guaranteed work or not. And in either case the answerable damages to plaintiff would be the value of its apparatus, considered in respect of its usefulness in the business in which defendant was engaged, as distinguished from its agreed price, freight charges paid and to be paid, and the amount expended in sending its expert workman to-place the machine in position and superintend the test. There ought to be no difficulty in ascertaining the amount of either of these items, or the sum of them, with reasonable certainty.

In the cases on this subject, we find that, as against the term used in describing damages for a breach of contract, preponderant weight and influence has been given to the ease or difficulty of measuring the consequences of the breach. This court, in *Henderson v. Murphree,* 109 Ala. 556, 20 South. 45, quoted a note to Wood's Mayne on Damages, to the effect that when the damages are certain and susceptible of ready ascertainment the sum fixed upon will be treated as a penalty. And again in the same case: "Where a sum of money, whether in the name of a penalty or otherwise, is introduced into a covenant or agreement merely to secure the enjoyment of a collateral object the enjoyment of the object is to be considered as the principal intent of the deed or contract, and the penalty only an accessary, and therefore only to secure the damages really incurred." From test 5 laid down in *Keeble v. Keeble, supra,* may be extracted the converse proposition: Where the agreement is for the performance of an act, and the prĕcise damage resulting from a breach is wholly uncertain, or incapable of being ascertained save by conjecture, the parties may agree on a fixed sum as liquidated damages, and the courts will so construe it, un-

less it is clear, on other grounds, that a penalty was really intended. And this last was the rule which controlled the decision of that case, and the case of *Henderson v. Murphree, supra.* In the recent cases of *Stratton v. Fike,* 166 Ala. 203, 51 South. 874, and *Cleveland Crane Co. v. American Cast Iron Pipe Co.,* 168 Ala. 250, 53 South. 313, our decisions, in holding the stipulations in those cases provided for liquidated damages, very clearly recognized the prime importance of the consideration that the damages secured were not of easy ascertainment. But in *Mansur Co. v. Tissier Co.,* 136 Ala. 597, 33 South. 818, where damages for the breach alleged were said to be of easy ascertainment, the court seems to have been entirely willing, for that reason alone, to hold, as it did for that and another reason, that the amount stipulated in the contract was a penalty and not liquidated damages. Agreeably to the trend of our decisions, a number of cases from the courts of other states are cited in a note to *Kelso v. Reid,* 27 Am. St. Rep. 716, (s. c., 145 Pa. 606, 23 Atl. 323), where the rule is thus stated: "In ascertaining whether a sum stipulated as payable for breach of a contract is a penalty or liquidated damages, the rule is that, if the damages resulting from the breach can be definitely computed, the stipulated sum must be construed as a penalty; but, where such damages are not susceptible of admeasurement by a pecuniary standard, then the sum stipulated must be regarded as liquidated damages." Other cases to the same effect are cited from the courts of other states in a note to section 1175 of 2 Page on Contracts. In still other states this rule has been adopted by statute. It is an equitable rule—and from equity the whole modern doctrine on this subject has been imported into the law courts (*Spencer v. Tilden,* 5 Cow. [N. Y.] 150, note)

—and seems to have come into very general favor. [On consideration of these authorities, and the merits of this particular case as disclosed by the whole contract, our conclusion is that the stipulation in question ought to be held for a penalty intended to provide for such actual damages as plaintiff might incur on a breach by defendant of its collateral covenants or agreements.] Other specific, equitable considerations which would conduce to the same view have been mentioned in the brief for appellee; but we place our opinion upon a proper construction of the particular stipulation for "liquidated damages," and will not consider other more general equities for the purpose of modifying the contract.

Appellant suggests that defendant also acquired a license to use the apparatus, which was patented, and that the damage to plaintiff on this account could not be estimated. There is no merit in the suggestion. Whether it be considered that defendant, as a result of its alleged breaches of the agreement, was required to keep merely the material—as the parties considered would be the case in the event the apparatus failed to stand the test—or, in the event of no test, an organized apparatus, though, possibly, wholly worthless to the defendant for its purposes, plaintiff parted with nothing more than the machine; for, on whatever consideration defendant acquired the material or the machine, the necessary implication was that it had the right to make use of it.

No actual damages were alleged in the counts under consideration. We are therefore of opinion that the demurrers were properly sustained.

The trial being had on the case as stated in count 1, by agreement of the parties, as the judgment entry shows, defendant pleaded "the general issue, with leave

to give in evidence any matter that could be specially
pleaded, with like leave to plaintiff to reply the gen-
eral issue in short, and also give in evidence any mat-
ter that could be set up by special replication." Under
issues thus framed, it was competent for defendant to
show that it had furnished steam for the test as agreed,
and that the failure of the apparatus was not due to
any breach of the contract in that regard, but to in-
herent defects.  The machine was to do certain work
in a limited time; it was to dry green lumber in two
days.  Defendant's evidence went to show that it re-
quired six days.  This was clearly proper.  But de-
fendant was allowed to show that its old machine, un-
der similar conditions as to steam supply, did the work
in five days, thereby in effect and purposely, as clearly
appears, instituting a comparison between the two ma-
chines.  We are unable to appreciate how this com-
parison was relevant to any proper issue in the cause;
nor are we able, on the other hand, to say that its ad-
mission did not operate to plaintiff's prejudice.  Rather,
it seems, this evidence held out to the jury a sort of
invitation to decide the general issue involved for
plaintiff or defendant as they might find the new or old
machine more efficient.  But defendant's right under its
contract could not be made to so depend.  For this er-
ror the judgment is reversed.

The questions asked of Williams, to which the court
sustained defendant's objections, did not call for an ex-
pert opinion in a proper case.  They sought to have the
witness state to the jury his opinion that the failure of
the apparatus furnished by plaintiff to stand the test
was to be attributed to defendant's failure to supply
steam at the agreed pressure, rather than to the ineffi-
ciency of the apparatus.  That was the very question
the jury were called to decide.  And, so far as it de-

pended upon the question whether steam was supplied at the agreed pressure, it depended upon a question of fact to be determined upon the ordinary observation of witnesses. There was no call for expert testimony. And, further, they left it to the witness to construe the contract. That was for the court.

Appellant requested the affirmative charge on the case as a whole and on count 1. · The argument for these charges and for error in their refusal shows that they were intended to assert the proposition that, upon defendant's failure to return the aparatus within 10 days after its rejection, it became bound to pay the purchase price as claimed in count 1. But, as we have seen, this notion is based upon a false construction of the contract. These charges were properly refused.

Charges 4 and 5, given to defendant, correctly construed the contract, and had support in the evidence.

Reversed and remanded. All the Justices concur, except DOWDELL, C. J., not sitting.

SIMPSON, J.—While the courts in England and in this country have formulated certain rules for determining whether the damages provided for the breach of contracts shall be construed as liquidated damages or a penalty, yet the purpose of these rules is to ascertain *what the parties intended*; and when their intention is clearly and explicitly expressed no court has the power to change the contract and make it express something that the parties did not intend. It is true that many courts have gone very far, in taking into consideration all the facts and circumstances, and in construing contracts to provide for penalties, where there are strong expressions indicative of liquidated damages; and it is true that the mere use of those expressions does not always govern the construction of the contract, but no

[Walshe Mfg. Co. v. W. T. Smith Lumber Co.]

court has ever gone so far as to hold that it could set aside a contract clearly and unequivocally made, and substitute for it one which the parties did not make. In some cases it has been held that to construe the contract as providing for liquidated damages would be so oppressive and unreasonable that the court will seize upon slight circumstances in order to determine that the parties *did not intend* such a contract, and in other cases the equitable doctrine in regard to unconscionable bargains has been invoked to relieve parties from such contracts.

But, aside from these principles, I hold that all men have the inalienable right to contract as they please, and when a contract is fairly and clearly made it is binding on both parties. "The contract is to govern; and the true question is, What was the contract? Whether it was folly or wisdom for the contracting parties thus to bind themselves is of no consequence, if the intention is clear. If there be no fraud, circumvention, or illegality in the case, the court is bound to enforce the agreement."—13 Cyc. 90, 91, and notes.

This matter had the consideration of this court at an early day; and, while the able Chief Justice (Collier) made extensive reference to the English cases and the rules laid down, yet he shows clearly that all of those rules were for the purpose of ascertaining what was the intention of the parties. He says: "The first general principle in the construction of all contracts is that they should be so expounded as to carry into effect the intention of the parties."—*Watt's Ex'rs v. Sheppard,* 2 Ala. 425, 434, 444, 446.

In the other leading case of *Keeble v. Keeble,* 85 Ala. 552, 5 South. 149, this court, speaking through Somerville, J., said: "(1) The court will always seek to ascertain the *true and real intention* of the contracting

parties, giving due weight to the language or words used in the contract, but not always being absolutely controlled by them, when the enforcement of such contract operates with unconscionable hardship, or otherwise works an injustice. * * * (8) Whether the sum agreed to be paid is out of proportion to the actual damages, which will probably be sustained by breach, is a fact into which the court will not enter on inquiry, if the intent is otherwise made clear, that liquidated damages, and not a penalty, is in contemplation. * * * (10) In applying these rules, the controlling purpose of which is to ascertain the real intention of the parties, the court will consider the nature of the contract, the terms of the whole instrument, the consequences naturally resulting from a breach of its stipulations, and the peculiar circumstances surrounding the transaction," etc.

This court also said on this subject (*Henderson v. Murphree,* 109 Ala. 556, 20 South. 45) : "But it is agreed on all hands that, where the true intention of the parties, who are legally competent to contract, is clear and unmistakable, the courts will give it effect; * * * and courts will not relieve them from the hardships of hard or improvident bargains, if made."— 109 Ala. 559, 20 South. 46. And, after stating certain rules, added : "But when the purpose is clear it is said there seems to be no reason to hesitate to give it effect." —109 Ala. 561, 20 South. 47.

I think this court lost sight of these fundamental principles of law in the case of *Mansur & Tebbetts Implement Co. v. Tissier Arms & Hardware Co.,* 136 Ala. 597, 33 South. 818.

This court also, in a recent case, said : "The first general principle in the construction of all contracts is that they shall be so expounded as to carry into effect

the intention of the parties." Also: "The parties were competent to contract. Neither was the ward of the court. The stipulation is clear and certain, and we cannot know or say that it was unreasonable, oppressive, or unconscionable. We think it should be enforced as it was written."—*Stratton v. Fike,* 166 Ala. 203, 208, 212, 51 South. 874, 876, 877.

I think the contract in the present case is clear and definite, and there is no room for construing it to mean anything other than that which it states. I think, also, that it is not oppressive or unconscionable, but reasonable to the effect that the plaintiff sells the goods under a guaranty, but protects itself by providing that the defendant shall test the goods within a certain time, and, if they fail to come up to the guaranty, he is to reload them on the cars within 10 days thereby releasing himself entirely from the contract of sale; but if he does not do so he forfeits the right to return the goods, which means that he retains them on the contract of sale and pays the regular price for them.

It matters not whether it be called liquidated damages or a mere compliance with his contract, I think the defendant has bound himself to pay the amount claimed, and the court should so have declared. The court erred in sustaining the demurrers to the third, fourth, and fifth counts of the complaint.

I therefore concur in the reversal of the case; but, as some of the positions taken in the opinion are not in accordance with my views, I have thought proper to express them.

MCCLELLAN and MAYFIELD, JJ., concur.